[No. 19712. Department One. May 5, 1926.]

F. H. HESS, *Appellant,* v. CEDARHOME LUMBER COMPANY
et al., *Respondents.*[1]

[1] CORPORATIONS (188)—CONTRACTS—SURETYSHIP—LIABILITY. Where a corporation has no express authority in its articles to enter into contracts of guaranty, its obligation as a signer on a note of its sole stockholder, given in consideration of the purchase price of his stock when he bought out the other stockholders, is void as to all creditors of the corporation.

[2] SAME (188). Such an obligation of the corporation, without any consideration moving to it, is void as to subsequent creditors, whether the parties to the transaction were estopped or not.

[3] SAME (212)—INSOLVENCY AND RECEIVERS—REMEDIES OF CREDITORS. The receiver of an insolvent corporation cannot recover the amount wrongfully paid out of the corporation capital upon a note given by its sole stockholder, and guaranteed by the company, where the payment was made by personal check of such stockholder while the corporation was a going concern and supposed to be solvent and the payee received the amount, believing in good faith it to be a dividend out of the profits of the company.

[4] SAME (28)—CAPITAL STOCK—REDUCTION. A reduction of the corporate stock of the corporation to an amount not less than its debts and liabilities is expressly authorized by Rem. Comp. Stat. § 830.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered July 13, 1925, upon findings in favor of defendant in an action to enforce a corporate liability, tried to the court. Reversed.

*Herr, Bayley & Croson,* for appellant.

*Marion A. Butler* and *Horan & Mulvihill,* for respondent.

FULLERTON, J.—The Cedarhome Lumber Company is a corporation organized under the laws of the state of Washington. It was originally incorporated with a

[1]Reported in 245 Pac. 753.

capital stock of $75,000, divided into 750 shares of the par value of $100 each. Of these shares, the appellant, F. H. Hess, subscribed for 562½ shares, and the defendant George A. Bell for 187½ shares. At the time of the organization of the corporation, Hess paid on his stock subscription $15,000, and 75 of the shares were issued to him and 75 to his wife, J. E. Hess. Bell at the same time paid on his subscription $5,000, and 50 shares were issued to him. Neither of the subscribers thereafter paid anything more on their subscriptions, and no more of the capital stock was ever issued. The corporation engaged in the lumber business at East Stanwood, in Snohomish county. Its business proved profitable. By October 14, 1921, it had acquired property, estimated by Bell to be of the net worth of $110,000, and by F. H. Hess, of $90,000. Its obligations at that time amounted to approximately $10,000, owing to the respondent, First National Bank of Everett.

On the date above given, the trustees of the corporation were F. H. Hess, J. E. Hess and George A. Bell, and on that date held a meeting duly called for the purpose of reducing the capital stock of the corporation to $20,000, the amount of the capital stock paid in, and for which shares were issued and outstanding. By a unanimous vote of the stockholders, the stock was so reduced. On their face, the proceedings had in this behalf were regular and in compliance with the statute.

On October 14, 1921, Hess and wife sold and assigned their shares of the stock in the corporation to Bell. The purchase price agreed to be paid therefor was $51,900. On the purchase price Bell paid $11,000 in cash, and for the remainder gave to F. H. Hess three promissory notes; the first for the sum of $15,900, due on or before two years after date; the second for the sum of $12,000, due on or before three years after

date; and the third for the sum of $13,000, due on or before ten years after date. Each of the notes bore interest at the rate of six per centum per annum, payable annually, and contained an accelerating clause to the effect that the holder could, at his option, declare the same due on the nonpayment of interest when due. The notes were executed by George A. Bell, Mabel S. Bell, and by the corporation as makers; the corporation signing by George A. Bell as its president and Mabel S. Bell, as its secretary. As security for the notes, a mortgage was executed to F. H. Hess by the corporation, covering all, or principally all, of its property, both real and personal.

After the transfer of the stock, Bell assumed the sole management of the corporation. For the following two years its business continued to be prosperous. Bell withdrew from the business during this period $51,100 and deposited it in a bank to his private account. From the sum so deposited, he paid to Hess the first of the notes above mentioned and the accrued interest on the others, the total amounting to $17,574.

In June, 1923, Bell moved the business of the corporation to Berrydale, in King county. At this time Bell secured a credit from the respondent bank, and thereafter incurred other obligations, so that by January 28, 1925, the corporation became insolvent, and on that day the respondent, Oscar G. Heaton, was appointed its receiver. The record shows, and the trial court found, that all of the indebtedness owing by the corporation at the time of the execution of the notes and mortgage was thereafter fully paid. The record does not disclose with any definiteness whether the corporation became free of debt subsequent to that time, but it is probable that it at all times had outstanding current obligations arising from the necessities of its busi-

ness. It is clear, however, that none of the creditors filing claims with the receiver became such prior to the removal of the business to King county.

In a statement made orally at the conclusion of the evidence, although it does not appear in the formal findings, the trial judge expressed the view that the corporation was solvent at the time of the sale of the stock to Bell, that the transaction was entered into in good faith by both of the parties, and that the mortgage was also executed in good faith; saying that he did not think there was "anything in the evidence that arouses a suspicion to the contrary." This, we may add, is in accord with our view of the evidence.

In the present action, F. H. Hess sought to recover against George A. Bell, Mabel S. Bell, and the corporation, on the unpaid notes, and sought to foreclose the mortgage given by the corporation to secure the notes. The receiver and the First National Bank of Everett appeared and defended. The other defendants defaulted. The defendants appearing, while admitting the execution of the notes and the mortgage by the corporation, contended that, because they were not executed for an indebtedness owing by the corporation, but for the individual obligation of Bell, they were executed without consideration, were beyond the powers of the corporation, and void as to creditors of the corporation, whether existing or subsequent. The lower court sustained the contention and refused to charge the corporation with liability on the notes, or allow a foreclosure of the mortgage. It also found that the sums withdrawn by Bell from the corporation, prior to its removal to King county, were withdrawn largely from the assets of the corporation and not from its earnings, and that the appellant Hess, at the time he received the sums paid on the notes, "had knowledge of such facts as would have conveyed to an ordi-

narily careful man knowledge of the fact that the money which he received was coming out of the assets of said corporation," and entered a judgment in favor of the receiver and against Hess for the amount so received, namely, $17,574. It entered a judgment in favor of Hess and against George A. Bell and Mabel S. Bell, as individuals and as a community, for $29,805, the amount unpaid upon the notes. Hess appeals from so much of the judgment as is adverse to him.

[1]  The powers of the defendant corporation, as set forth in its articles of incorporation, are: to engage in logging and lumbering; to engage in the manufacture and sale of lumber and timber, and all products incidental thereto; to buy, own, sell, mortgage, and otherwise deal in real estate; to buy, own, sell, mortgage, and otherwise deal in all forms of personal property; to borrow money, to issue bills and notes and other forms of indebtedness, including bonds, mortgages and trust deeds securing the same; and to do any and all other things, not herein specifically enumerated, which may be necessary and appropriate to the performance of the special powers hereinbefore set forth. In its articles, it is given no special power to become surety for another, or to pledge its property to secure the payment of an obligation of another. Nor does the statutory enumeration of the powers belonging to corporations, organized for the purposes for which this corporation is organized, include these powers. It is provided therein, among other things, that such a corporation has power to purchase, hold, mortgage, sell and convey real and personal property, and to carry on all kinds of business within the objects and purposes of its incorporation as expressed in its articles of incorporation, but it is given no express authority to become surety, or pledge its property as security, for the debt or obligation of another.

Since, therefore, the obligation assumed in this instance by the corporation was not an obligation of its own, or an obligation in any way connected with its business, but was an obligation solely that of its principal stockholder, the question is, has it implied powers so to do.

The general rule applicable to such a situation is stated in 14A C. J. p. 732, § 2781, as follows:

"In the absence of express statutory authorization, a corporation has no implied power to lend its credit to another by issuing or indorsing bills or notes for his accommodation, where the transaction is not related to the business activity authorized by its charter as a necessary or usual incident thereto, and such a prohibition is contained within an express statutory provision that no corporation shall employ its assets for any purpose other than to accomplish the objects of its creation and shall not create any indebtedness except for money paid or labor done or for property actually received. And not having the power itself, a corporation cannot authorize its officers to bind it by making or indorsing such paper. This rule is universal as to banking and insurance companies, building and loan associations, municipal corporations, railroad and plank road companies, and manufacturing and trading companies. It applies, however, only to transactions which are in substance a signing for the accommodation of another, and has no application to a transaction which, while it may be in form a signing for accommodation of another, is really a transaction based upon a valid consideration, and within the charter powers of the corporation."

In the case of *In re Romadka Bros. Co.*, 216 Fed. 113 (Circuit Court of Appeals, Seventh Circuit), the suit was upon a promissory note, signed by the corporation as guarantor. The consideration for the note did not move to the corporation, nor was it executed for its benefit, but was the personal indebtedness of its stockholders to the payee of the note. Speaking of

the aspect of the corporation as guarantor, the court said:

"In this aspect of the claim, the corporation appears as an accommodation guarantor of the indebtedness of the makers, and the doctrine is well settled that a corporation cannot ordinarily become bound for such purpose, so that its naked promise as surety or guarantor (with or without independent consideration) could not be enforced. 3 Cook on Corporations (6th Ed.) § 774; 4 Thompson, Com. on Corporations, § 5739; 10 Cyc. 1115. This doctrine is a mere exemplification of the established general rule that the contractual powers of a corporation are limited to objects authorized (either expressly or by implication) in its incorporation. It is upheld in Wisconsin (*Madison, W. & M. Plank Road Co. v. Watertown & P. Plank Road Co.,* 7 Wis. 59; *Kennan v. Rundle,* 81 Wis. 212, 51 N. W. 426) and by this court, in effect, in the case entitled *In re Haas Co.,* 131 Fed. 232, 234, 65 C. C. A. 218."

Further on in the opinion it was also said:

"The contentions that the evidence establishes liability under the contract, treated as one of guaranty on the part of the corporation, are both untenable, as we believe, for like want of supporting facts. Undoubtedly the corporation may bind itself as surety or guarantor for performance of a contract made for its benefit, or in furtherance of an object within its corporate powers and purposes (vide *Winterfield v. Cream City Brewing Co.,* 96 Wis. 239, 242, 71 N. W. 101), but payment of debts owing by its stockholders to third parties, wherein the corporation has no interest, direct or indirect, is plainly not for its benefit, nor within its corporate objects. *In re Haas Co., supra.* As before stated, the transfer of real estate by the stockholders to the corporation were prior and independent transactions and for an independent consideration, wherein the payee of the note in suit neither claimed nor had any interest; and the evidence discloses no benefit granted to or acquired by the corporation in consideration of its guaranty. The further fact relied upon as proving consideration—agreement by the payee to

accept from the makers, as collateral security, $100,000
of stock in place of the entire amount theretofore
pledged—is without force, for the reason that it was
for the exclusive benefit of the makers and the corpora-
tion had no interest and acquired no benefit in such
arrangement.

"We believe, therefore, that the purported guaranty
indorsed thereon by its officers was purely an accom-
modation promise, not within the corporate powers and
not binding as a corporate obligation, and that no cir-
cumstances are in evidence to estop the corporation
'from invoking the defense of ultra vires.' "

Our own cases, in so far as we have noticed the ques-
tion, seem to be in accord with the general rules an-
nounced in the citation from Corpus Juris. In *Wash-
ington Mill Co. v. Sprague Lumber Co.,* 19 Wash. 165,
52 Pac. 1067, it appears that one Nygard purchased the
shares of a stockholder in the defendant corporation,
incurring an obligation to the stockholder in the sum
of $2,500. For this sum he gave his promissory note,
signed as makers by other stockholders of the corpora-
tion. The holder assigned the note to a bank, the bank
knowing the purpose for which the note was given.
The note was not paid at maturity and was renewed.
Later, at the request of the bank, the corporation gave
a mortgage on its real and personal property to secure
its payment. In the trial court, on a hearing had in
the action, it was made to appear that the defendant
corporation was insolvent, and a receiver was ap-
pointed for it. The receiver thereupon intervened in
the action, and sought to have the mortgage to the
bank declared void and canceled, on the ground that
it was executed for the debt of another, and that the
corporation had no authority under its articles of in-
corporation to become a surety. This contention the
trial court sustained, and its judgment setting aside

the mortgage was affirmed in this court. In the course of the opinion this language was used:

"The court below found, and the proof shows, that at the time the mortgages were executed there were various creditors of the Lumber Company whose claims have never been paid. These creditors were represented by the receiver, and if the mortgages were void as to them, or any of them, the court was right in setting them aside. Bump, Fraudulent Conveyances (4th ed.), § 34. And we are of the opinion that they were void as to existing creditors at least, and all *bona fide* creditors are therefore entitled to participate in whatever funds the receiver may procure as the proceeds of the property of the corporation. Wait, Fraudulent Conveyances (3d ed.), § 104; Bump, Fraudulent Conveyances (4th ed.), § 297. It is true that our statute in relation to corporations authorizes them to mortgage, sell and convey real and personal property (1 Hill's Code, § 1500, subd. 3, Bal. Code, § 4253), but that does not change the law as to the rights of creditors. Nor does that section authorize corporations to mortgage their property for all conceivable purposes and under all circumstances. A corporation, being the mere creature of the law, possesses only those powers which the statute, or its articles of incorporation, confer upon it, either expressly or as necessarily incidental to the purposes for which it was created. Green's Brice's Ultra Vires, 29; *Bank of Augusta v. Earle,* 13 Pet. 587; *Dartmouth College v. Woodward,* 4 Wheat. 518; *Beach v., Fulton Bank,* 3 Wend. 583. Our statute also provides that corporations shall have power to carry on all kinds of business within the objects and purposes of the company, as expressed in the articles of incorporation. 1 Hill's Code, § 1500, subd. 7 (Bal. Code, § 4253). The articles of incorporation of the Sprague Lumber Company provided that the object and purposes of the company were 'to manufacture, buy and sell lumber, and of engaging in the lumber business and selling all kinds of building material.' And, as incident to the business therein specified, the company might have bought lumber on credit and properly mortgaged its property to secure the payment

of such debt. But manifestly it had no power to mortgage all its property, without consideration, to secure the debt of any, or all, of its stockholders, to the injury of its creditors. It was no part of its business to become surety for the accommodation of others. Green's Brice's Ultra Vires, p. 252; *Lucas v. White Line Transfer Co.*, 59 Am. Rep. 449 (30 N. W. 771). See, also, *Madison etc., Plank Road Co. v. Plank Road Co.*, 7 Wis. 59. And every person dealing with it was charged with notice of its powers. When a corporation enters into a contract which under no circumstances it has power to make, such contract is void as to its creditors, although assented to by all of its stockholders."

In *Spencer v. Alki Point Transportation Co.*, 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058, the court, speaking to a similar situation, used this language:

" 'A corporation has no power to enter into a contract of suretyship or guaranty, or otherwise lend its credit to another, unless the power is expressly conferred by its charter, or unless such a contract is reasonably necessary or is usual in the conduct of its business. Ordinarily the simple act of becoming surety or guarantor for the contract or debt of another person or corporation is not within the implied powers of a corporation.' 7 Am. & Eng. Ency. Law (2d ed.), p. 788. See, also, *Washington Mill Co. v. Sprague Lumber Co., supra.* There is no evidence that the Alki company derived any power from its charter to engage to pay the debt of another, nor is there any evidence that it had theretofore entered into such engagements. It is also urged that a corporation, having received the benefit of such a contract, will not be heard to urge that it was *ultra vires.* This rule may be conceded in proper cases. It is unavailing to appellant. The evidence that it received a benefit and, if so, to what extent, is too vague and uncertain to become the foundation of any right."

In *Hoffman v. Gottstein Investment Co.*, 101 Wash. 428, 172 Pac. 573, it appears that one Gottstein was indebted to one Wolff, and gave his promissory note for

the indebtedness. Gottstein was in the mercantile business, and later formed a corporation, to which he sold the business with the stock on hand. Wolff thereupon demanded that the corporation execute a note in lieu of the personal note of Gottstein. This note was executed, and the action was by the executor of Wolff against the corporation to recover on the note. The trial court held there could be no recovery, and this holding we affirmed. In the opinion it was said:

"Looking to the record as a whole, we cannot escape the conclusion that this transaction was, in legal effect, nothing but an effort on the part of M. Gottstein to pay his own personal debt by the execution and delivery to Wolff of the note of the corporation in lieu of his personal note, and it seems to us equally plain that Wolff was bound to take notice of this as the legal effect of the transaction he then had with Gottstein. Our decision in *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225, seems to us decisive of this case in favor of respondent, investment company. On page 264 of that decision we quoted with approval from the language of the decision of the New York Court of Appeals in *Wilson v. Metropolitan Elev. R. Co.*, 120 N. Y. 145, 24 N. E. 384, 17 Am. St. 625, as follows:

" 'Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation.' "

See, also: *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225; *Payne v. White Swan Auto Co.*, 126 Wash. 550, 219 Pac. 32.

[2] But the appellant contends that neither the respondent, First National Bank of Everett, nor the receiver, is in a situation to urge successfully the want of authority on the part of the defendant corporation

to execute the note and mortgage here in question. He argues that the obligations are valid as between himself and the corporation, and that since the bank is a subsequent creditor, and since the receiver represents subsequent creditors, the doctrine of estoppel is applicable, as the obligations they represent were incurred with constructive, if not actual, knowledge of his note and mortgage. The case from this court principally relied upon to support the contention is *Roy & Co. v. Scott, Hartley & Co.*, 11 Wash. 399, 39 Pac. 679. The opinion in the case does, indeed, contain expressions which seem to support the claim, but what was said must be construed with reference to facts presented, and these differ widely from the facts of the present case. The obligation there in question was the obligation of the corporation, and the mortgage and bill of sale attempted to be set aside were given to secure the obligation. They were attacked, not on the ground that the obligation secured by them was not the obligation of the corporation, but on the ground that one of the officers executing the instruments was also an officer of the corporation to whom they were given, and that the officer was personally bound on the obligation. With reference to these facts, it was said, *arguendo,* that, since the instruments were voidable rather than void, the right to avoid them would belong only to persons who had an interest in the property before their execution, not to subsequent creditors. But the language of the opinion must be construed with reference to the facts before it, and, so construing it, it cannot be said to militate against the subsequently decided cases.

There is a difference of opinion among the courts from other jurisdictions on the question, but we think it unnecessary to review them. Plainly, our own cases, where the question was necessary for decision, announce the rule that an obligation given by a cor-

poration for the personal debt of its stockholder, with no consideration moving to the corporation, is void as against those having claims against the corporation, whether these be claims prior or subsequent to the assumption of the obligation. It follows, therefore, that there was no error in the judgment of the trial court on this branch of the case.

[3] We think, however, there was error in the judgment in so far as it allowed a recovery for the sums paid on the notes. These were paid by the personal checks of Bell, drawn on his individual deposit in a bank, at a time when the corporation was a going concern, and, in so far as anyone knew, while the corporation was in a flourishing condition. In *McDonald v. Williams*, 174 U. S. 397, it was held that a receiver could not recover from a stockholder of a national bank a dividend paid to him while the bank was a going concern and not insolvent, although the dividend was paid "not at all out of profits, but entirely out of the capital," when the stockholder receiving the dividend acted in good faith, believing the same to be paid out of the profits. For a much stronger reason, it would seem, there could be no recovery where the money was paid by the personal check of the debtor drawn on a personal deposit, even though the deposit came from the capital stock of a corporation of which the payor was an officer. Whether knowledge of the source of the deposit would make a difference in the rule, we need not determine, for here, notwithstanding the formal finding of the court to the contrary, we find no evidence to show that the appellant at the time he received the payments had any such knowledge.

[4] To sustain this part of the recovery, the respondents contend that the reduction of the capital stock of the corporation was illegal, and that the appellant Hess is indebted to the corporation in a sum greater than the

judgment against him. But we think we need not follow the argument urged in support of the contention. Passing the question whether it is open to the respondents to urge the contention, we find in it no merit. As we have said, the proceedings had in that behalf were regular upon their face, and we see nothing in the evidence which warrants the conclusion that the proceedings were not had in entire good faith. It was a proceeding expressly authorized by the statute (Rem. Comp. Stat., § 3830) [P. C. § 4529], and the capital stock was not diminished to an amount less than its then debts and liabilities, the only restriction on the right to reduce the statute contains.

The judgment of the trial court is reversed, and the cause is remanded with instructions to modify the judgment in accordance with this opinion.

TOLMAN, C. J., HOLCOMB, MITCHELL, and MAIN, JJ., concur.