[No. 30536. Department One. March 19, 1949.]

EDWARD T. HAY, *Individually and as Administrator,*
*Respondent,* v. THE BIG BEND LAND COMPANY
*et al., Appellants.*[1]

[1]Reported in 204 P. (2d) 488.

*Frank P. Weaver* and *David O. Hamlin,* for appellants.

*Fielding H. Ficklen* and *Keith & Winston,* for respondent.

BEALS, J.—Prior to 1901, M. E. Hay and E. T. Hay, brothers, were engaged in the mercantile business at Wilbur, Washington. April 1, 1901, the two brothers, together with W. W. Ashley, organized, under the laws of the state of Washington, The Big Bend Land Company, a corporation, to conduct a general real-estate business, to borrow and loan money, to operate farms, and to buy and sell goods, wares, and merchandise. The capital stock of the company consisted of $10,000, divided into 100 shares at the par value of $100 each.

Prior to 1921, the capital stock of the corporation was increased to $750,000, represented by 7,500 shares of common capital stock of the par value of $100 per share. It appears that, over a period of years between 1901 and 1921, L. L. Hay, the wife of M. E. Hay, had, it may be presumed, from her separate funds, advanced large amounts of money to the corporation, which was, in the year last mentioned, indebted to Mrs. Hay in an amount exceeding $500,000.

During the year 1921, the corporation desired to borrow money for corporate purposes, but, in view of its large indebtedness to Mrs. Hay, was unable to procure the desired loan. The Hay brothers also desired to convey their mercantile business to the corporation at a valuation of $100,000. That going business was conveyed to the corporation at a valuation of $100,000, and, December 27, 1921, the capital stock of the corporation was increased from $750,000 to $1,500,000, represented by an increase in the common stock from 7,500 shares to 8,500 shares, the par value remaining at $100 per share, preferred stock in the amount of 6,500 shares of the par value of $100 per share also being issued.

The articles of incorporation were amended, the amendments providing, in part, as follows:

"(a) The holders of the preferred stock shall be entitled to receive, when and as declared by the Board of Trustees

of this Corporation, cumulative dividends thereon from the date of issuance of said preferred stock at the rate of six (6%) per cent per annum and no more, payable out of the surplus profits of this Corporation annually on the 31st day of December of each year before any dividend shall be paid or set apart for the common stock. Dividends on the preferred stock shall be cumulative, so that if in any year dividends amounting to six (6%) shall not have been paid on such stock the deficiency shall be paid before any dividend shall be declared or paid upon or set apart for the common stock.

"RETIREMENT OF PREFERRED STOCK

"(b) This Corporation may at any time, or from time to time as shall be permitted under the laws of the State of Washington, redeem the whole or any part of its preferred stock on any annual dividend date by paying therefor in cash One Hundred and one and 50/100 ($101.50) Dollars per share, and all accrued unpaid dividends thereon at the date fixed for such redemption. . . .

"(d) In the event of any liquidation, dissolution or winding up of the Corporation the holders of the preferred stock shall be entitled to be paid in full the par value thereof, and all accrued unpaid dividends thereon before any sum shall be paid to or any assets distributed among the holders of the common stock, but after payment to the holders of the preferred stock of the amounts payable to them as hereinbefore provided, the remaining assets and funds of the Corporation shall be paid to and distributed among the holders of the common stock."

The amended articles also provided for redemption of any portion less than the whole of its preferred stock and for the payment of dividends upon the common stock out of surplus profits "remaining after the payment of full dividends on the preferred stock for all previous dividend periods." Voting rights were restricted to the owners of the common stock.

Apparently, less than 6,000 shares of preferred stock were issued, Mrs. L. L. Hay receiving, in satisfaction of the indebtedness of the corporation to her, 5,400 shares of the preferred stock.

While the corporation owned a large amount of valuable real estate, it has paid no dividends, either on common or preferred stock, since 1921, and, with the exception of one

year, has continuously shown corporate deficits, the inconsiderable profits earned some years having never been sufficient in amount to overcome prior losses.

M. E. Hay died in 1933, and his widow, L. L. Hay, died some years thereafter. E. T. Hay also died, leaving as his heirs two children, Edward T. Hay and Fayette Hay Imhoff, the original plaintiffs in this action. After the trial before the superior court, Mrs. Imhoff died, her brother, Edward T. Hay, as administrator of her estate, having been substituted for her as a party plaintiff. Plaintiff Edward T. Hay owns $3\frac{3}{4}$ shares of the corporation's preferred stock and $576\frac{1}{2}$ shares of common stock, the estate of Fayette Imhoff owning $3\frac{3}{4}$ shares of preferred stock and $424\frac{1}{2}$ shares of common stock.

January 14, 1947, the plaintiffs filed in the office of the clerk of the superior court for Spokane county their complaint in this action, naming as defendants The Big Bend Land Company, a corporation, Edward M. Hay, Neva Hay Hood, and Margaret Hay Weaver "as directors," Bruce M. Hay, as president, and Jerome C. Barline, as secretary. The complaint also named as defendants, in their individual capacities, Neva Hay Hood, Catherine Hay Barline, Margaret Hay Weaver, Bruce M. Hay, Edward M. Hay, and Raymond M. Hay (children of M. E. and L. L. Hay), Marion E. Hay, Jennie Alexander, Evelyn Shufeldt, and Bruce M. Hay, Edward M. Hay and Raymond M. Hay as executors of the will of L. L. Hay, deceased.

The plaintiffs filed an amended complaint, February 3, 1947, alleging some matters which occurred after the filing of the original complaint.

Apparently, all of the individual defendants, save Jerome C. Barline, are stockholders in the defendant corporation, the president, secretary, and directors of the corporation being named as parties defendant in their corporate capacities, and also (with the exception of Mr. Barline) being named individually as defendants.

By the amended complaint, plaintiffs alleged their ownership of preferred and common stock in the corporation as above set forth, their stock evidently being a portion of

the corporate stock formerly owned by their parents, E. T. and Mary L. Hay.

The complaint then alleged the issue of preferred stock as above set forth, and that, for certain reasons alleged, the preferred stock so issued was fictitious and void; that the assets of the corporation were incorrectly stated in its books of account; that, after the filing of the original complaint, at a meeting of the stockholders of the corporation held January 18, 1947, a resolution was adopted by the stockholders, providing for the redemption of the corporation's preferred stock, upon payment "of the call amount ($101.50), reserving to the owner any right he may have as to accrued unpaid dividends"; that the action of the corporation above referred to was illegal and unauthorized.

The amended complaint further alleged that, at the same meeting of the stockholders, Article VI of the articles of incorporation was amended by reducing the par value of the shares of common stock from $100 each to $10 each, the shares of preferred stock to remain at the par value of $100 each; that the action of the stockholders was wrongful in that the value of the common stock was reduced, while the value of the preferred stock was not reduced; and that the action of the majority of the stockholders was illegal and void in law.

The plaintiffs prayed that the defendants be enjoined from redeeming any of the preferred stock of the corporation, and that the action of the stockholders in reducing the par value of the stock be declared illegal and be canceled. Plaintiffs also asked for general relief.

The defendants answered the amended complaint, alleging the various acts of the corporation and the board of trustees (or directors) providing for the reduction of the par value of the capital stock and for the redemption of the preferred stock, as above set forth, were correct and lawful in all particulars, as well as pleading other corporate acts, and prayed that the action be dismissed.

The defendant Evelyn A. Shufeldt appeared by Brown and Brown, her attorneys, and filed her answer to the plain-

tiffs' complaint, but, apparently, did not participate in the trial, nor has she appealed from the decree entered.

At plaintiffs' instance, a temporary injunction was issued, restraining the defendants *pendente lite* from redeeming any of the preferred stock until the entry of the final decree in the action; and, the issues having been completed, the action was tried to the court and submitted for decision, May 28, 1947. The court filed its memorandum opinion, August 26, 1947, and, upon defendants' motion, the case was reopened for the taking of additional testimony. Upon conclusion of the trial the court, December 4, 1947, filed its decree in accordance with the memorandum opinion.

From the decree, the defendants (save Evelyn A. Shufeldt) have appealed, assigning error (1) upon that portion of the decree declaring that the corporate action, in reducing the par value of the shares of its capital stock from $100 per share to $10, was unlawful and consequently null and void; (2) upon that portion of the decree declaring the corporate action amending the by-laws of the corporation, setting forth the method by which the corporation's preferred stock might be called for redemption, was unlawful and consequently null and void; (3) upon that portion of the decree declaring that the corporate action, in calling for redemption of 7½ shares of the preferred stock belonging to each stockholder holding all or any portion of that number of preferred shares, was without authority and void; (4) upon that portion of the decree enjoining the corporation and its officers and trustees from redeeming the preferred stock of the corporation, or any portion thereof, until the further order of the court.

By its decree, the court adjudged that respondents had failed to sustain the burden of proving the allegations of their amended complaint, alleging that the 5,433 shares of preferred stock issued by the defendant corporation were unlawfully issued, and denied any relief to respondents in connection with this portion of their complaint. Respondents have not prosecuted any cross-appeal from this portion of the decree. We are here concerned only with appellants' contentions, as stated in their assignments of error, that the

trial court erred in including in its decree the provisions above referred to.

In November, 1946, there had been issued 6,500 shares of the corporation's common stock, 5,090 shares being in private ownership, the balance in the treasury. There had also been issued 6,500 shares of preferred stock, of which, at the time of the trial, the respondents owned 7½ shares and the appellants 5,425½ shares, the balance never having been issued.

During the year 1934, it was ordered by the stockholders that, if the corporation defaulted in paying dividends on the preferred stock, each share of that stock would be entitled to one vote, for such time as dividends remained unpaid.

At the annual meeting of the stockholders, held in January of 1946, a survey of the corporate financial structure was authorized; and, November 18, 1946, the board of directors made its report to the stockholders, showing in detail the financial condition of the corporation, its gains or losses during the preceding six years, the corporate deficits for the same period, as well as its assets less the deficits, and the amount of unissued stock. The corporation's gross income, its operating expenses, assets, and liabilities, were also indicated. The report showed that no dividends had ever been paid on the preferred stock, although that stock was entitled to receive an annual accumulated return of six per cent, to be paid out of surplus profits, the report stating that, while there had been some operating profits, dividends could not be declared because of existing deficits.

The board recommended that, at the next annual meeting, the par value of the common stock be reduced from $100 to a par value of $10 per share, the directors stating that such action would in no way change the proportionate interest nor the rights of any common stockholder, either as between themselves or in relation to the preferred stockholders, but that such action would remove the existing bookkeeping deficit and place the company in a position to "pay dividends and call its preferred stock." The report

also stated that a considerable group of stockholders had expressed the desire that a policy of corporate liquidation be adopted, and that the directors should follow that suggestion and bring the matter before the stockholders at their next annual meeting.

The report also stated that there had been accumulated, during the year 1946, approximately $100,000 in cash, the board suggesting that, at the next annual meeting, the stockholders "discuss the advisability, manner and method of retiring and calling a portion of the preferred stock in the light of possible liquidation."

The annual meeting of the stockholders was held at the corporation's office at Spokane, January 18, 1947, pursuant to written notice, respondent E. T. Hay being present in person and Fayette Hay Imhoff being represented by her proxy. There were 4,894 shares of common stock represented in person or by the owner's proxy, as were 5,165½ shares of preferred stock. During the course of the meeting, Marion E. Hay offered the following resolution:

"WHEREAS, the Board of Directors has heretofore established a policy of purchasing no additional real property, either for operation or for resale, nor any additional personal property not necessary for the management of the corporation or the preservation of its assets; and of disposposing of corporate assets and impounding the proceeds until such policy could be reviewed by the stockholders, now therefore,

"BE IT RESOLVED that such policy be approved and continued with a view to reducing all corporate assets to cash in an orderly manner, at their fair market value, as speedily as circumstances permit, in order that at a subsequent date the stockholders may consider and adopt a plan of liquidation, distribution and dissolution of the corporation."

It was moved and seconded that the resolution be adopted. After some discussion, the motion was unanimously carried.

Thereafter, E. M. Hay proposed an amendment to Article IV (VI) of the by-laws by adding to the article a new section designated "section 3," reading as follows:

"The Board of Directors shall have the power from time to time and in its own discretion, to redeem all or any por-

tion of the outstanding preferred shares at $101.50 per share, plus accrued unpaid dividends, and to designate the particular shares to be redeemed; that said Board shall have authority to redeem all or any portion of the outstanding preferred shares either by making periodic payments thereon or payment in full, and shall have the right to redeem in whole or in part by the payment of the call amount ($101.50), reserving to the owner any right he may have as to accrued unpaid dividends; that the Board and the owner may by agreement waive the ninety-day notice of redemption."

The amendment was adopted, respondents voting in the negative.

Thereafter, a resolution was offered amending the first two paragraphs of the amended Article VI of the articles of incorporation so as to change the par value of 6,500 shares of common stock from $100 to $10 each.

Respondents objected to the resolution upon the ground that it proposed to reduce the par value of the common stock without reducing the par value of the preferred stock in a similar manner. The resolution was adopted, respondents' stock voting in the negative.

The trial court, by its decree, after denying respondents relief in connection with certain matters pleaded by them in their amended complaint, adjudged and decreed that the amendment of Article VI of the articles of incorporation of The Big Bend Land Company, one of appellants herein, reducing the par value of the common stock of the corporation as above set forth, was "unauthorized and invalid and is hereby declared to be null and void." Appellants assign error upon this portion of the decree.

In the case at bar, no question is presented concerning the claims of the holders of preferred stock to accrued or cumulative dividends; but this matter, to some extent at least, inheres in the questions presented.

It must be borne in mind that the stockholders of the corporation voted unanimously that the corporate affairs be put in order in preparation for liquidation of the corpora-

tion and the distribution of its assets to the stockholders in accordance with their legal rights.

Respondents, in several paragraphs of their amended complaint, alleged that the corporation's preferred stock was not issued to bona fide subscribers and was void as a fictitious stock increase, also alleging that, at the time the preferred stock was issued, the assets of the corporation were insufficient to authorize any increase of capital stock. Respondents alleged other reasons in support of their contention that the issuance of the preferred stock was wrongful, and prayed that the entire issue of preferred stock be declared null and void.

Concerning this phase of respondents' case, the trial court adjudged and decreed as follows:

"(1) That the plaintiffs have failed to sustain the burden of proving the claim asserted in Paragraphs 16, 18 and 20 of their amended complaint having to do with the alleged invalidity of 5433 shares of the preferred stock of the defendant, Big Bend Land Company; that all portions of plaintiffs' complaint, as amended, dealing with such claim be and they are hereby dismissed with prejudice;

"(2) That all preferred stock issued by the defendant, Big Bend Land Company, pursuant to its increase of capital stock made on December 27, 1921 was issued for a good and valuable consideration and the same is hereby declared to be legal and valid;"

We shall now consider appellants' assignment of error based upon the portion of the decree adjudging the corporate action reducing the value of the common stock null and void.

Rem. Rev. Stat. (Sup.), § 3803-24 [P.P.C. § 447-1], provides that

"1. Every corporation shall carry upon its books as a liability the amount of its capital stock . . ."

The corporate action in reducing the par value of the common stock should be considered in view of the proposed dissolution of the corporation, and not as a measure adopted for assisting the corporation to continue in business as a going concern.

In 11 Fletcher, Cyclopedia Corporations (Perm. ed.) (hereinafter referred to as Fletcher), 270, § 5150, appears the following text:

"When all the shares of stock of a corporation are of the same class, and the capital stock is reduced because of losses, the loss on the reduction must be borne by all the stockholders alike in proportion to their shares. But when there are different classes of shares, the loss on such reduction must fall upon those who would have to bear it if there was a winding up."

Paragraph (d) of Article VI of the articles of incorporation, as amended December 27, 1921, reads as follows:

"(d) In the event of any liquidation, dissolution or winding up of the Corporation the holders of the preferred stock shall be entitled to be paid in full the par value thereof, and all accrued unpaid dividends thereon before any sum shall be paid to or any assets distributed among the holders of the common stock, but after payment to the holders of the preferred stock of the amounts payable to them as hereinbefore provided, the remaining assets and funds of the Corporation shall be paid to and distributed among the holders of the common stock."

In this connection, it may be noted that the preferred stock was accepted by bona fide creditors of the corporation in full payment of money due them from the corporation, the creditors, apparently, having accepted the preferred stock as an accommodation to the corporation.

The principle that a majority of the stockholders must, at all times, exercise good faith toward the minority stockholders, is well recognized. This principle is well stated in 13 Am. Jur. 475, § 423; 18 C. J. S. 745, 756, §§ 269, 278; 11 Fletcher 756, § 5309.

The courts have been careful to carry this principle into execution. *Central Bldg. Co. v. Keystone Shares Corp.*, 185 Wash. 645, 56 P. (2d) 697; *Wool Growers Service Corp. v. Simcoe Sheep Co.*, 18 Wn. (2d) 655, 140 P. (2d) 512, 141 P. (2d) 875; Rem. Rev. Stat. (Sup.), § 3803-33 [P.P.C. § 445-7]; 13 Am. Jur. 314, § 195.

In 11 Fletcher 745, § 5302, is found the following text:

"In like manner, on a reduction of the capital stock because of losses, preferred stock must be reduced proportionately with common stock, unless there is some special provision in the statute or contract of the parties fixing a different rule, and individual preferred stockholders cannot object if their rights are sufficiently protected. It has been held that this rule does not apply, where the stock is preferred, not merely as to dividends, but also as to capital, and that in such case the common stock must be first resorted to, even to the point of extinction, before the preferred stock can be compelled to contribute. But there is authority to the contrary."

The following texts, with interest in this connection, read as follows:

13 Am. Jur. 316, § 197:

"It seems to be the rule that where the amount of capital stock is reduced in effecting a partial liquidation on account of losses, the reduction must fall first upon the common stock, where the preferred stock is given a preference as to capital assets."

33 A. L. R. 1266, note:

"It seems to be the rule that, where the amount of capital stock is reduced in effecting a partial liquidation on account of losses, the reduction must fall first upon the common stock, where the preferred stock is given a preference as to capital assets. *Page v. Whittenton Mfg. Co.* (1911) 211 Mass. 424, 97 N. E. 1006; *Re Floating Dock of St. Thomas* [1895] 1 Ch. (Eng.) 691, 64 L. J. Ch. N. S. 361, 13 Reports, 491, 43 Week. Rep. 344; . . ."

In *Page v. American & British Mfg. Co.*, 129 App. Div. 346, 113 N. Y. Supp. 734, cited by respondents, appears the following:

"The capital stock of a corporation may be increased or reduced as authorized by statute, but in the absence of express statutory provision the right of the individual stockholder to the proportionate voice in the conduct of the affairs of the corporation and equitable interest in its property which his stock gives him when he becomes a stockholder must be preserved. The interest of the plaintiff in the property if dissolution were to take place now might not be affected by the action taken because on dissolution the preferred stock was first to be paid in full, but the right of

a stockholder to a voice in the management of a corporation in which he has invested money is a property right and vested interest entitled to protection under the Constitution. [Citing cases.]"

In connection with this phase of the case, paragraph (d) of the 1921 amendment to the articles of incorporation, *supra,* should be noted.

In the case at bar, the reduction in the value of the shares of the common stock in nowise affected the voting power of the holders of that stock.

 From the facts disclosed by the record, we hold that the action of the corporation, in reducing the par value of its shares of common stock for the purpose of creating a sufficient surplus to eliminate the then existing impairment of the capital property of the corporation, was appropriate and a valid exercise of corporate power.

It appears, however, that the previously existing value of the common stock, as fixed by the articles of incorporation, was reduced to an extent greater than was absolutely necessary to balance the corporation's accounts. If the amount of the reduction of the value of the common stock was greater than was necessary, and if, by such a reduction, the holders of the common stock were unfairly prejudiced, a court of equity could grant them relief.

In view of the contemplated liquidation of the corporation, it could not have been expected that dividends would be earned in the future as the result of the conduct of corporate business. For all practical purposes, the corporation was no longer a going concern, and, while it had not yet been placed in the actual process of dissolution, the stockholders, by unanimous vote, had directed that the corporate assets be sold preparatory to the termination of the corporate entity.

In the case of *Hess v. Cedarhome Lbr. Co.,* 139 Wash. 107, 245 Pac. 753, 47 A. L. R. 71, this court approved a reduction of the capital stock of the corporation, declaring that the proceeding had been regular, and finding

" . . . nothing in the evidence which warrants the conclusion that the proceedings were not had in entire good faith. It was a proceeding expressly authorized by the statute (Rem. Comp. Stat., § 3830) [P. C. § 4529], and the capital stock was not diminished to an amount less than its then debts and liabilities, the only restriction on the right to reduce the statute contains."

In the case cited, the rights of creditors were involved, and the case is not here directly in point, but may be considered as having some bearing upon the question under discussion.

In the case of *Johnson v. Bradley Knitting Co.*, 228 Wis. 566, 280 N. W. 688, 117 A. L. R. 1276, an action by a minority stockholder seeking to restrain the corporation and its officers from carrying out a plan of reorganization through certain amendments of its articles of incorporation, the supreme court of Wisconsin affirmed the judgment of the trial court in so far as it denied the plaintiff equitable relief. In the course of the opinion, the court said:

"The proposed amendments in the instant case were adopted by the required statutory vote. We must hold the amendments valid and binding upon the plaintiff who consented thereto in advance when he became a member and stockholder of the defendant company.

" 'It is also the law that the majority, even with respect to operations within the powers of the corporation, cannot fraudulently or dishonestly conspire to turn over to themselves corporate property or advantages to the detriment of the corporation itself or a minority of its stockholders. "But where the act of either such body, though lawful in itself, is designed to accomplish some illegitimate object,—the mainspring of the transaction is some ulterior motive,—and the result, if permitted to operate, will be injurious to the corporation or members not concerned in the transaction, such a member may successfully invoke equity jurisdiction for protection of the corporation where the proper officers will not do it." *Theis v. Durr,* 125 Wis. 651, 104 N. W. 985. It is also the law, assuming the corporation to have the power, that the majority, "as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion." *Theis*

*v. Durr, supra.' Martin Orchard Co. v. Fruit Growers C. Co., supra,* p. 103.

"It is elementary law that legal power cannot be used to effectuate a fraudulent purpose. This rule has no application in the instant case since no fraud is alleged or proved.

"Appellant makes the further contention that if the statutes be construed so as to permit the amendments indicated, such changes can be made only in the interest of the corporation and not in the interest of one class of stockholders as against another class, and that the amendments in question are not in the interest of the corporation. Whether the amendments are in the interest of the corporation would seem to be committed to the judgment of the stockholders."

Respondents cite the case of *Theis v. Durr,* 125 Wis. 651, 104 N. W. 985, 110 Am. St. 880, 1 L. R. A. (N.S.) 571, referred to in the quotation from the case last cited.

In the *Theis* case, the court stated:

"We do not intend by the foregoing to suggest that a court of equity can supervise or revise corporate action within the scope of the corporate power where there is no bad faith in the matter; only error of judgment. In such matters the members of a corporation, as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion."

The court, however, accorded the plaintiff stockholder relief, holding that, in the case before the court,

" . . . the authority to reduce authorized capital stock was in form exercised for the wrongful purpose of creating a basis for favoring the majority of stockholders at the expense of the minority. In short, a statutory authority given for one purpose was abused by being used for another and clearly illegitimate purpose."

In the case of *DeMello v. Dairyman's Co-op. Creamery,* 73 Cal. App. (2d) 746, 167 P. (2d) 226, it was held that minority stockholders in a co-operative creamery could not complain of a reorganization of the association, as, under the plan proposed, the plaintiffs would continue to hold their full proportionate interest in the assets or, at their option, could withdraw and receive in cash an amount equal to that which they could recover under the original plan of organ-

ization. The court held that the proposed plan of reorganization "did not violate any vested contract or property rights held by plaintiffs," and denied appellants any relief.

Respondents refer to the case last cited, observing that changes in the rights of stockholders may be justified in the exercise of business discretion, in meeting needs arising in the course of the corporate business. Respondents then argue that, in the case at bar, no corporate necessity or sound business practice could be served by the reduction in the par value of the shares of common stock.

In the case of the dissolution of a corporation, situations which would require changes in the corporate structure might arise, as well as in the course of the business of an active corporation. For twenty-five years, The Big Bend Land Company had earned no substantial profit, and it would seem that, in directing the liquidation and dissolution of the corporation, the stockholders (by an unanimous vote) exercised a sound discretion.

It seems probable that the reduction of the par value of the common stock would not result in any loss to the holders thereof upon the final dissolution of the corporation, as the owners of the common stock would receive everything remaining after the owners of the preferred stock received their lawful due; but it is not necessary to consider this question.

The trial court erred in adjudging the corporate action, reducing the par value of the common stock, null and void.

We shall now consider questions presented by appellants in connection with that portion of the decree appealed from by which the trial court adjudged that the contemplated and proposed redemption of shares of preferred stock of the defendant corporation was prejudicial to the corporation, and particularly to the respondents, and was without authority in law, the decree permanently enjoining and restraining the directors and officers of the corporation from taking any further steps to redeem any preferred stock, and from paying out any funds of the corporation on that account, until further order of the court.

The trial court also adjudged null and void the resolution adopted by the stockholders granting the board of directors power to redeem all, or any portion, of the outstanding preferred shares "by the payment of the call amount of $101.50," and reserving to the shareholder any right to accrued unpaid dividends.

By the amended Article VI of the articles of incorporation, adopted December 27, 1921, *supra,* the capital stock of the corporation was established as follows:

" . . . common stock in the amount of eighty-five hundred (8500) shares of the par value of One Hundred ($100) Dollars each, and preferred stock in the amount of sixty-five hundred (6500) shares of the par value of One Hundred ($100) Dollars each."

The amended article further provided that the holders of the preferred stock shall be entitled to receive, when and as declared by the board of trustees, cumulative dividends, from the date of issuance, at the rate of six per cent per annum and no more, payable annually out of the surplus profits of the corporation before any dividend could be paid on common stock, the dividends on the preferred stock to be cumulative, and, if not paid, any deficiency to be paid before any dividend could be declared on the common stock.

It was further provided by paragraph (b) of the amended Article VI:

"(b) This Corporation may at any time, or from time to time as shall be permitted under the laws of the State of Washington, redeem the whole or any part of its preferred stock on any annual dividend date by paying therefor in cash One Hundred and one and 50/100 ($101.50) Dollars per share, and all accrued unpaid dividends thereon at the date fixed for such redemption. At least ninety (90) days notice of every such redemption shall be given to the holders of record of the stock to be redeemed, in such manner as shall be provided in the By-laws of this Corporation, or from time to time by resolution of its Board of Trustees. If at any time this Corporation shall determine to redeem less than the whole amount of its preferred stock then outstanding, the particular stock to be redeemed shall be ascertained in such manner as shall be provided in its By-laws, or from time to time by resolution of its Board of Trustees. Except as herein

otherwise specifically provided the Board of Trustees shall have full discretion to prescribe and regulate from time to time the procedure to be followed in and all details concerning the redemption of shares of the preferred stock."

At the annual meeting of the stockholders of the corporation, held January 18, 1947, as shown by the minutes which were introduced in evidence, an amendment to Article IV (evidently an error for VI) of the by-laws (evidently an error for articles of incorporation) was offered and, on motion, was adopted, respondents' stock voting in the negative. The amendment reads as follows:

"The Board of Directors shall have the power from time to time and in its own discretion, to redeem all or any portion of the outstanding preferred shares at $101.50 per share, plus accrued unpaid dividends, and to designate the particular shares to be redeemed; that said Board shall have authority to redeem all or any portion of the outstanding preferred shares either by making periodic payments thereon or payment in full, and shall have the right to redeem in whole or in part by the payment of the call amount ($101.50), reserving to the owner any right he may have as to accrued unpaid dividends; that the Board and the owner may by agreement waive the ninety-day notice of redemption."

Pursuant to the above-quoted amendment, the board of directors, January 18, 1947, adopted the following resolution:

"RESOLVED that 7½ shares of preferred stock be called for redemption and retirement from each stockholder holding all or any portion of that amount as soon as the articles of reduction have been filed as provided by law; that notice of such redemption be given by the secretary as provided in the by-laws; that each such preferred stockholder have the privilege of receiving payment of principal and premium on or after February 15th, 1947, upon deposit of his certificate with the Company and without prejudice to his right to payment of accumulated dividends out of capital surplus or other corporate assets or earnings on or after ninety days from the call date; that such notice shall state that no dividends shall accumulate upon the shares called for retirement after the end of the 90-day call period; that the secretary be authorized to give receipts for shares or cer-

tificates of preferred stock tendered for redemption in pursuance of the said notice and to embody in the receipt the above provisions with respect to accumulated dividends."

The stockholders were notified that:

"In accordance with the terms of the above resolution, notice is hereby given that upon surrender of a certificate of your Preferred stock, redemption of 7½ shares, or all of the certificate if you own less than 7½ shares, will be made. Notice is further given that no dividends shall accumulate upon the shares called for redemption after 90 days from January 18, 1947."

A few days later, the stockholders were advised that, as, in this action, the court had entered an order restraining the company from redeeming the stock, no stock would be redeemed until further notice.

■■■■ The preferred stock having been issued pursuant to the amended articles of incorporation, adopted in 1921, neither the board of trustees nor the stockholders had lawful authority to provide for the call and redemption of shares of preferred stock upon any basis other than that corporate authority pursuant to which the preferred stock was issued and accepted by the preferred shareholders.

No question as to the authority of the stockholders or directors to take action, in accordance with *unanimous* consent of all of the stockholders concerned, is presented, as the record shows that some holders of preferred stock objected. The call was peremptory, and not optional. No question concerning a call of the latter nature is here presented, and, concerning the legality of such a call, we express no opinion.

The corporation's preferred stock was issued pursuant to authority conferred upon the corporation by the stockholders in 1921. By paragraph (b) of the amended articles of incorporation, *supra*, it was provided that the corporation might redeem the whole or any part of its preferred stock "by paying therefor in cash One Hundred One and 50/100 ($101.50) Dollars per share, and all accrued unpaid dividends thereon at the date fixed for such redemption."

Acceptance of the preferred stock by the shareholders completed the contract between them and the corporation. Under the concluding portion of the paragraph, the power to give notice of redemption of all or any portion of the preferred stock less than the whole amount then outstanding, and the selection of the particular stock to be redeemed, was vested within the discretion of the board of directors. The concluding sentence of the paragraph vests full discretion in the directors to prescribe the procedure to be followed in redeeming the stock "except as herein otherwise specifically provided." The amount to be paid for the stock by the corporation on redemption is "specifically provided" by the first sentence in paragraph (b).

By the amendment to the articles of incorporation, adopted by the stockholders, January 18, 1947, the stockholders purported to vest in the board of directors, in the exercise of its discretion, the power to redeem all or any portion of outstanding preferred shares at $101.50 per share, plus accrued unpaid dividends, and the board was granted the right to redeem the stock "in whole or in part by the payment of the call amount of $101.50, reserving to the owner any right he may have as to accrued unpaid dividends."

The resolution thereafter adopted by the board of directors provided for the call of 7½ shares of preferred stock from each stockholder holding that number or any fraction thereof of preferred stock, and that each preferred stockholder have the privilege of receiving payment of principal and premium on or after February 15, 1947, on the deposit of his certificate with the company, without prejudice to his right to the future collection of accumulated dividends. The resolution further provided that no dividend would accumulate "upon the shares called for retirement after the end of the 90-day call period."

Notice to the stockholders advised them that the preferred stock would be redeemed in accordance with the resolution. They were further advised "that no dividends shall accumulate upon the shares *called for redemption* after 90 days from January 18, 1947." Apparently, each stockholder

received a copy of the resolution and the notice to present stock, typed upon the same sheet of paper, a copy thereof being in evidence.

The 1947 amendment to the articles of incorporation, *supra,* purported to vest in the board of directors power to redeem all or any portion of the outstanding preferred shares upon the terms stated. The resolution adopted by the board of directors, January 18, 1947, provides that the holders of preferred stock called for redemption "have the *privilege* of receiving payment of principal and premium" etc., upon deposit of his certificate of stock with the company.

The following notice to the stockholders, after designating certain stock called for redemption, advised the stockholders that no dividends would accumulate upon shares called after the expiration of ninety days. The "call" of preferred stock, if valid, would redeem all of the preferred stock owned by respondents.

The resolution of the board of directors, adopted January 18, 1947, was to the effect that each preferred stockholder have the "privilege of receiving payment of principal and premium." If, by this resolution, the board intended to grant to each stockholder the *privilege* of surrendering his preferred stock upon receipt of the payment referred to in the resolution, but conferring upon him also the right to refuse to avail himself of the privilege accorded and, at the same time, give him the right to continue to receive accrued dividends upon his stock, an interesting question would be presented as to the right of the board to grant the preferred stockholders such an option as to all or a particular portion of their preferred stock.

On the other hand, the board of directors evidently construed the resolution as vesting the board with authority to require the preferred stockholders to surrender the called stock under penalty of future failure of the stock to accumulate dividends.

No question is here presented concerning the right of the holders of preferred stock to receive dividends in any par-

ticular amount, at any stated time, or at all. Of course, the preferred stockholders would lose their voting rights on surrender of their stock certificates. The corporation could not *require* the holders of preferred stock to surrender their certificates and give up their right to vote as holders thereof, without payment in full of all sums due them, in accordance with the 1921 amendment to the articles of incorporation.

The payment of any accumulated dividends due upon each share of preferred stock is an inseparable portion of the price to be paid upon redeeming the preferred shares. No question concerning the right of preferred stockholders to receive dividends on their stock is here presented.

It would seem that the preferred shareholders in a corporation might, by mutual agreement, arrange their redemption of the shares of preferred stock upon any fair basis which would not be prejudicial to the corporation or to other shareholders, but we are not here concerned with any such mutual arrangement between preferred shareholders and the corporation. The 1947 amendment to the articles of incorporation and the subsequent resolution, adopted by the board of directors, were considered by the corporate authorities as providing for surrender of preferred shares pursuant to a peremptory call by the board.

The 1921 amendment also provides for payment of *all sums due* upon call of the preferred stock. The 1947 amendment purports to provide that the preferred stock could be redeemed "either by making periodic payments thereon or payment in full," and, in that particular, violates the basic corporate article providing for the issuance of preferred stock.

We shall not further extend this opinion by discussing the trial court's findings of fact and conclusions of law, as stated in its memorandum opinion.

That portion of the decree appealed from, contained in paragraphs four and five thereof, whereby the trial court adjudged the corporate action, in reducing the par value of the common stock from $100 to $10 per share, null and void, is reversed and, on remand, the decree will be amended so

as to adjudge and decree that the corporate action above referred to was a lawful and valid exercise of the corporate powers of appellant corporation.

By paragraph six of the decree, the trial court adjudged that the resolution (quoted in the decree)

" . . . adopted by the holders of more than two-thirds of the outstanding stock on January 18, 1947, by which such majority of the stockholders of the defendant corporation purported to authorize the redemption of preferred shares of stock is without authority and is invalid and is hereby declared to be null and void."

This portion of the decree is affirmed.

Paragraph seven of the decree will be deleted and stricken from the decree and the following paragraph will be substituted in lieu thereof:

7. Ordered, adjudged, and decreed, that the contemplated and proposed and attempted redemption of shares of preferred stock of the defendant corporation, pursuant to the resolution adopted by the stockholders, January 18, 1947, is without authority of law and void, and the defendant corporation, its directors, and officers, are hereby permanently enjoined and restrained from redeeming any of the corporate preferred stock, and from taking any further steps to redeem any such preferred stock, pursuant to the corporate resolution referred to.

No appeal was taken from paragraphs one, two, and three of the decree.

Save as above set forth, the decree entered herein is affirmed.

Appellants, having by their appeal obtained substantial relief in this court, will be allowed their costs on appeal.

JEFFERS, C. J., STEINERT, MALLERY, and HILL, JJ., concur.

---

May 3, 1949. Petition for rehearing denied.