[No. 38046. Department Two. April 21, 1966.]

W. J. HENDRICKS, JR., *et al., Appellants,* v. MILL ENGINEERING & SUPPLY Co., *et al., Respondents.*\*

*Ralph B. Potts,* for appellants.

*Aiken, St. Louis & Steere,* by *Paul W. Steere* and *Charles E. Siljeg,* for respondents.

WEAVER, J.—In this action plaintiffs seek judgment: (a) declaring null and void a board of directors' corporate resolution of June 26, 1963 redeeming 25 shares of the corporation's Class "A" voting preferred stock; (b) declaring that the 25 shares are not redeemed but are in good standing

\*Reported in 413 P.2d 811.

on the books of the corporation with all voting rights, and belong to plaintiff, W. J. Hendricks, Jr.; and (c) directing the board of directors to re-amend the articles of incorporation to increase the number of the corporation's Class "A" voting preferred stock to the number that existed prior to the purported redemption. Plaintiffs allege fraud on the part of the defendant directors. Plaintiffs appeal from a judgment dismissing their complaint with prejudice, entered after trial to the court.

Defendant, Mill Engineering & Supply Company is a Washington corporation engaged principally in the manufacture and sale of large gang saws and other machinery for use in the lumber industry. The four individual defendants[1] comprise a majority of the corporation's seven-man board of directors. We designate them the "Sundbom group" since Nels W. Sundbom, president of the corporation, owns a majority of the common stock, directly and through a testamentary trust.

The plaintiffs are stockholders allied with W. J. Hendricks, Sr. We refer to them as the "Hendricks group." During a 2-year period preceding the annual stockholders' meeting of May 6, 1963, Mr. Hendricks, Sr. began to increase his stock holding by acquiring stock owned by various minority shareholders. The trial court found that:

> His intention in purchasing these shares was to obtain control of the corporation and to provide an employment opportunity for his son.

The plaintiffs were unable to obtain control of the corporation at the May 6, 1963 annual stockholders' meeting because they had not transferred their recent stock acquisitions on the books of the corporation and a number of the proxies they presented were invalid. At the meeting, however, the Sundbom group placed Mr. Hendricks, Sr. and two of his associates on the board of directors in the hope of establishing tranquility.

---

[1] Nels W. Sundbom, Harvard Palmer, M. S. Alexander and Ingwald L. Ramberg.

Following the stockholders' meeting the Hendricks group caused all of their voting stock to be reregistered in their names on the corporate records so that stock ownership then stood

*Common Stock*
Sundbom group .......................288½ shares
Hendricks group ......................269½ shares
*Redeemable Class "A" Preferred Stock* (which had voting rights)
W. J. Hendricks, Jr. ....................25 shares

It is apparent that the 25 shares of redeemable preferred stock represents the balance of voting power. With it the Hendricks group owned a majority of the voting stock by 6 shares.

The articles of incorporation, as amended, provide in part:

> The fully participating Class A preferred stock is subject to call and may be redeemed and retired at par, out of earnings or funds not necessary to the conduct of the business on any preferred stock dividend paying date, in such amounts and in such manner as may be determined *by the board of trustees.* (Italics ours.)

June 19, 1963, Mr. Hendricks, Sr. and the company secretary gave notice of a special stockholders' meeting to be held June 29 for the announced purpose "of removing the entire board of directors of Mill Engineering & Supply Company, and electing a new board of directors."

The defendant directors were, of course, opposed to this fundamental change. They believed the plaintiffs were not competent to run the business and that the corporation would be seriously injured if plaintiffs gained control of its management. Defendant directors believed the qualifications of the incumbent management to be very high. On several occasions they had discussed the possibility of redeeming the 25 shares of preferred Class "A" stock as a possible solution of the existing disharmony. Consequently, a special board meeting was held June 26, 1963 at which, by a vote of four to three, a resolution was adopted to redeem the stock by payment of its par value "plus all

unpaid dividends accrued thereon from date of issue to and including November 1, 1963." Payment was tendered but refused.

June 29, 1963, the special stockholders meeting convened. In another lawsuit between the parties, from which no appeal was taken, it was determined that the members of the board of directors elected May 6, 1963 "were never effectively removed" from office at the June 29 meeting.[2]

Because of pending litigation (see footnote 2), the board of directors, on November 1, 1963, reaffirmed and ratified the redemption of the preferred stock and the action of the corporate officers taken pursuant to the resolution of June 26, 1963.

There is little, if any, dispute over the facts. The clash comes in the conclusions to be drawn from them.

The main thrust of plaintiffs' statement of claim is that defendant directors breached their fiduciary relationship to the corporation, did not act in the utmost good faith, and did not retire the preferred stock for a legitimate business purpose.

A short answer is found in the trial judge's memorandum opinion, wherein he said:

> I must conclude that the Sundbom group in the exercise of their honest business judgment adopted a valid method of eliminating what appeared to them a clear threat to the future of the corporation. Plaintiffs have failed to carry the burden of proving fraud either of an actual or constructive nature.

■ The record amply supports the findings and conclusions of the trial judge. It would unduly extend this opinion to discuss the evidence in detail. The following is illustrative, however. One of the Sundbom directors, a vice-presi-

---

[2]State ex rel. W. J. Hendricks, et al. v. Mill Engineering and Supply Co., et al., King County No. 605091, was a proceeding in quo warranto validating the election of directors at the stockholders' meeting on May 6, 1963. Neither faction had two-thirds of the voting power necessary to remove a director (Laws of 1895, ch. 38, § 1, et seq.) even if the 25 shares of Class "A" preferred stock be counted. In its findings the court did "not decide whether the 25 shares of Class A stock were effectively redeemed on or after June 26, 1963."

dent and a senior trust officer of a large Seattle bank, testified that he voted to place three of plaintiffs on the board in an attempt to create a "climate of cooperation." He felt Mr. Sundbom, the president, was well known and had an excellent reputation in the industry. His explanation for voting in favor of the redemption resolution was that:

> I felt that it was imperative for the future success of this company that the then management of the company not be disturbed . . . . Mr. Sundbom was providing excellent management under very difficult circumstances. . . . I felt his ability was very high and I feared that if there were a change of management Mr. Sundbom would probably end up selling competitive equipment, which would presumably result in the destruction of this company. . . . [I]t would be disastrous to this company and to its future and to the value of its stock for which I had some responsibility, if this management were changed in that fashion.

The other defendant directors expressed the same thoughts; they believed that the Hendricks group could not manage the company as well as the present management. Further, they took into account the financial ability of the corporation to redeem the stock. They determined that the requisite funds "were not necessary to the conduct of the business" as required by the articles of incorporation quoted *supra*. The corporation had a net worth of over $225,000; its assets were unencumbered; it had no bank debt; its ratio of current assets to liabilities was over two to one; it had adequate cash.

From these facts, the trial judge found that

> this determination by the defendant directors was informed, reasonable and correct, and was not fraudulent or arbitrary.

We conclude, as did the trial court, that the actions of the defendant directors meet the test of the rule announced in *Kors v. Carey*, 39 Del. Ch. 47, 158 A.2d 136 (1960)[3] (discussed at length by both groups), in which the court said:

---

[3] We are aware of a distinction between *Kors, supra,* and the instant case. In *Kors* the corporation used corporate funds to purchase its own

directors, while bound to deal with stockholders as a class with scrupulous honesty, may in the exercise of their honest business judgment adopt a valid method of eliminating what appears to them a clear threat to the future of their business by any lawful means, *McPhail v. L. S. Starrett Co.,* 1 *Cir.,* 257 *F.2d* 388.

The four defendant directors, only one of whom had a personal stock interest in the corporation, were confronted by a clear threat to the future of the business. Exercising their honest, informed business judgment, they took steps to meet the situation. The sole remaining question is whether they employed a valid method and lawful means to achieve the desired end.

██ It is axiomatic that the board of directors cannot redeem the shares of preferred stock upon any basis other than the corporate authority pursuant to which the preferred stock was issued and accepted by the preferred stockholders. *Hay v. Big Bend Land Co.,* 32 Wn.2d 887, 905, 204 P.2d 488 (1949).

██ Plaintiffs urge that the stock was only subject to redemption on the first days of June and November, since the amended articles of incorporation designated them as dividend paying dates. Paragraph (f) of Article IV (as amended) (quoted *supra*) provides that "The fully participating Class A preferred stock is subject to call and may be redeemed and retired . . . on any preferred stock *dividend paying date,* in such amounts and *in such manner as may be determined by the board of trustees."* (Italics ours.)

The trial court held:

that the resolution providing for redemption [June 26, 1963] of the stock in question need only be made effective on a dividend paying date, and it is not necessary that the resolution be adopted specifically on a dividend paying date [November 1, 1963] . . . .

stock on the market through brokers in order to retain its present management. In the instant case, corporate funds were used to retire preferred stock in accordance with the articles of incorporation. Our decision is, of course, limited to the facts before us.

We agree. The board determined the manner of redemption as authorized by the articles of incorporation. The dividend paying date is only a general reference point to which the stockholder is entitled to accumulated dividends, as provided in the resolution of June 26 and as reconfirmed by the resolution of November 1, 1963. The directors employed a valid method and lawful means when they retired the preferred stock.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

---

June 10, 1966. Petition for rehearing denied.