

**FILED**
**NOVEMBER 5, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  36842-4-III |
| MARINA PALOMAREZ (fka WILCOX), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| MATTHEW EMERY WILCOX, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, A.C.J. — Both parties challenge aspects of the trial court's ruling following a marriage dissolution trial.[1]  Believing that personal expenses paid by a privately held business must be attributed as income to the working spouse, we conclude that the court significantly erred in its determination of the husband's income.  We reverse and remand for further proceedings consistent with this opinion.

FACTS

The parties, appellant/wife Marina Palomarez and respondent/husband Matthew Wilcox, had been married 25 years at the time of trial in January 2019, but had separated

---

[1] The husband did not cross appeal and therefore cannot receive affirmative relief from this court.  RAP 2.4(a).  We will address his assignments of error only as they concern issues on which the wife is entitled to relief.

in mid-2015. Relevant highlights from the trial court's extensive findings are discussed

here to place the appellate issues in context; other relevant facts will be mentioned later

during the discussion of the specific issues presented.

The primary issues at trial involved the valuation of a power sports business

owned by the community and the husband's income from operating it. The business was

purchased in 2008 for $400,000 and converted to a chapter S corporation in 2014. The

purchase was funded by a $300,000 loan from Mr. Wilcox's mother.[2] A $100,000 loan

by the former owner used to fund the remainder of the purchase was paid off by 2014.

The competing experts for the parties used different methods to value the business.

The wife's expert used an equity interest valuation process to value the business at

$809,000, and alternatively asserted that the fair market value was $522,000 as of the end

of 2015. The husband's expert valued the business at $335,000 using an asset-based

theory. Accepting the fair market value approach, with adjustments for inventory

obtained later in the year, the court valued the business at $500,000 as of June 30, 2015,

the time the couple separated. The court believed this approach also was consistent with

the husband's expert's valuation after accounting for the fair market value of the

inventory.

---

[2] Although there was some belief that the funds had been an advance of Mr. Wilcox's inheritance, testimony established that the anticipated inheritance only served as security for the loan.

The profitability of the business factored into the court's evaluation. For that purpose, the trial court agreed with the wife's expert that Mr. Wilcox could earn $100,000 per year as manager of the business. Mr. Wilcox, however, had only reported taking $34,000 to $40,000 per year in salary after converting to the S corporation format. Tax returns showed the company making about $16,000 a month after expenses. In addition, the company paid a significant amount of Mr. Wilcox's personal expenses, as well as about $4,000 per year in community expenses.

The court indicated it would not overrule Mr. Wilcox's business judgment concerning the amount of income the business needed to retain from its earnings. For purposes of spousal maintenance, the trial court assigned an income of $40,000 to the husband. The court ordered maintenance of $1,000 per month until 2022. At that point, Mr. Wilcox's pension from his prior employer will be transferred to Ms. Palomarez as her separate property. The maintenance award effectively supplemented Ms. Palomarez's income until retirement became possible.

The court awarded the business to Mr. Wilcox and the family home, the couple's second largest community asset, to Ms. Palomarez. In the final accounting, property valued at $506,250 was awarded to the husband and property valued at $381,166 was awarded to the wife. She was also granted her outstanding attorney fees of approximately $77,000, but after credits and offsets, the final figure was reduced to roughly $27,000.

No. 36842-4-III
*In re Marriage of Wilcox*

Ms. Palomarez timely appealed to this court. A panel heard argument by video connection.

ANALYSIS

The sole issue addressed in the published portion of this opinion involves the valuation of the husband's income from the business. Since the husband used the business to pay community and personal expenses, the money needs to be treated as income.

When determining whether to impose a support obligation, the dissolution court must consider the financial resources of the party seeking support and the ability of the other spouse to meet his or her needs. RCW 26.09.090. This requires that the trial court determine the income for both parties and enter a specific finding for income. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 562-63, 446 P.3d 635 (2019). All sources of income are relevant when calculating maintenance and a party cannot voluntarily reduce income just to avoid maintenance payments. 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 34:9 (2d ed. 2015). When a couple separates and lives apart, their respective earnings constitute separate property. RCW 26.16.140.

An S corporation pays no income tax, but passes its profits on to its owner(s) to be taxed at individual tax rates. *Gitlitz v. Comm'r*, 531 U.S. 206, 214 n.6, 121 S. Ct. 701, 148 L. Ed. 2d 613 (2001). Corporate income is calculated under the familiar formula of

4

income minus "ordinary and necessary" business expenses. *Comm'r v. Heininger*, 320 U.S. 467, 475, 64 S. Ct. 249, 88 L. Ed. 171 (1943). Whether an expense is "ordinary and necessary" is a factual determination for the tax court. *Id*. An S corporation is permitted to retain earnings for business purposes rather than pass the funds on to the owners. 26 U.S.C.A. § 535(c)(1).[3] The income, even though not distributed, still is reported on the individual's tax returns. *E.g*., Exs. 11 (l.17); 12 (l.21).

In resolving a dissolution proceeding, a court may look into the structure of a wholly owned corporate entity for the purposes of ensuring a fair division of assets. *W. G. Platts, Inc. v. Platts*, 49 Wn.2d 203, 208-09, 298 P.2d 1107 (1956).[4] Washington applies the rule that "a business's retained earnings should be considered income to the business's sole owner, absent a legitimate business need to retain the earnings." *In re Marriage of Stenshoel*, 72 Wn. App. 800, 806, 866 P.2d 635 (1993). The burden is on the business owner to demonstrate that retained earnings are solely maintained for the business. *Id*. at 806-07. However, it is not an abuse of discretion for the trial court to use the amount of money drawn by the community to calculate income if that value reflects the parties' income and living conditions predissolution. *Id.*

---

[3] Made applicable to S corporations by 26 U.S.C. § 1371(a).
[4] Similarly, when a person solely owns a corporation and closely controls its assets, those corporate assets may be used to satisfy personal debts. *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989).

Application of these standards to the business at issue in this appeal requires some discussion of relevant financial concerns. Here, the couple's business grew appreciably as the economy rebounded from the great recession. Corporate income in tax year 2011 was $16,329 and was $75,787 in 2013. Exs. 1, 3. The corporate tax returns for the years 2014-2017 when the business elected to be an S corporation showed the business making between $52,917 (2014) and $192,760 (2016). Exs. 6, 12. Despite the dramatic increase in income, Mr. Wilcox's salary increased very little. Exs. 5, 8, 12, 14.

The business paid a number of personal expenses. From the point of separation in mid-2015, Mr. Wilcox paid temporary spousal maintenance in the sum of $2,500 per month, as well as child support for a brief period until their daughter entered college. He duly deducted these expenses on his income tax returns. Exs. 11, 14. The business paid many of Mr. Wilcox's other personal expenses (car insurance, gas, telephone). Ex. 39. The business also paid personal expenses of the community prior to separation and afterwards. Ex. 39. The support payments were made by the business, as were Wilcox's attorney fees and expert witness fees. Ex. 39; Report of Proceedings (RP) at 42-43. The federal income tax withholding for Mr. Wilcox's income tax was treated as a business expense on the corporate return. RP at 43-45. As stated earlier, the trial court accepted Mr. Wilcox's chosen salary as the foundation for issuing the support rulings, selecting $40,000 as his salary for that purpose. The remainder of the business profit was permitted to be retained by the business. Clerk's Papers (CP) at 112-13. Under the noted

circumstances, we conclude that was error. The actual income was greater than the attributed income.

As noted in *Stenshoel*, the entirety of the retained income was available to Mr. Wilcox in the absence of a demonstrated *business* need. Mr. Wilcox had already paid the personal taxes on the income, establishing it as his own. His judgment about any business need for the funding was important information for the trial court to consider, but it was not dispositive. Plowing the income back into the company could serve a business purpose such as providing a corporate line of credit instead of using a commercial line of credit. Or it could simply increase Mr. Wilcox's equity in the business—a personal gain rather than a business need. The trial court needed to identify the business benefit of the retained earnings before excluding that income from its consideration.

Similarly, Mr. Wilcox had a substantial number of personal obligations paid for by the corporation, some of which were deducted as business expenses and some of which likely were not.[5] However, deductibility is irrelevant to the question of whether the payments were income to Mr. Wilcox. When the corporation stepped in and paid expenses

---

[5] For instance, personal attorney fees are not deductible expenses. *Garcia v. Comm'r*, T.C. Summ. Op. 2018-38, 2018 WL 3763347. Attorney fees spent defending against a federal investigation are a business expense. *Comm'r v. Heininger*, 320 U.S. 467, 474-75, 64 S. Ct. 249, 88 L. Ed. 171 (1943).

7

that benefited Mr. Wilcox personally, the payments were the equivalent of income. The trial court needed to account for that income when establishing maintenance.

The 2017 tax return filed by Mr. Wilcox demonstrates the nature of the problem. Despite a personal income of $39,891, Mr. Wilcox paid $38,812 in personal income tax because the business profit of $167,390 was also included in his income. Ex. 14. The corporation recognized its profits as Mr. Wilcox's income, despite his choice to leave that money in the business. He also deducted from his income the $30,000 in "alimony" paid to Ms. Palomarez. Ex. 14. He was not capable of paying either the taxes or the spousal support based from his official salary. Likewise, the business, a community asset, paid those obligations and other personal expenses such as his personal attorney and fees.

We conclude that when one spouse's personal expenses are paid by a corporation, the dissolution court must attribute those payments as income when calculating a support obligation. Here, the court erred in not doing so. Similarly, when one spouse receives income from a closely held corporation under his management and returns that income to the corporation, the trial court must carefully scrutinize the decision and may only exclude from the income calculation the money legitimately needed by the corporation. *Stenshoel*, 72 Wn. App. 800. Mr. Wilcox, as manager of the business, had a fiduciary obligation to manage the community asset on behalf of the community. Whether it was appropriate to return the money to the business rather than treat the income as his separate property was a significant question for the court to answer. The court erred in

failing to identify a business need for the cash.[6]  For both reasons, the income

determination was erroneous and we therefore reverse the spousal maintenance award.[7]

Reversed and remanded for further proceedings consistent with this opinion.

A majority of the panel having determined that only the foregoing portion of this

opinion will be printed in the Washington Appellate Reports and that the remainder,

having no precedential value, shall be filed for public record pursuant to RCW 2.06.040,

it is so ordered.

Remaining Issues

Ms. Palomarez alleges several additional errors, some of which have merit.  In

light of our remand, we address most of those contentions briefly.  Because we are

reversing the maintenance award and the property division, we leave it to the discretion

of the trial judge whether other aspects of the property division that are either not

challenged here or are affirmed need to be revisited when making a new property

division.  After discussing the challenged aspects of the property award, we turn to Ms.

Palomarez's request for attorney fees.

---

[6] The trial court recognized the problem in its very detailed and thorough findings of fact, but declined to dig deeper in the absence of evidence that the corporation had disbursed additional cash to Mr. Wilcox.  CP at 112 n.77.  Mr. Wilcox's own testimony that the maintenance and attorney fee payments were made by the business justified looking more carefully at Wilcox's use of the business income.

[7] We do not address Ms. Palomarez's other challenges to the maintenance award since it will have to be considered anew and the award may change on remand.

*Property Division Issues*

Before discussing specific challenges to the property division, we start by mentioning the principles that govern our review of these issues. Those principles involve the basic statutes governing dissolution of marriage and community property, as well as the standard for appellate review of trial rulings.

Washington is a community property state. Chapter 26.16 RCW. Thus, property "acquired after marriage" "is community property." RCW 26.16.030. The "word 'acquired' should be construed to encompass wages and other property acquired through the toil, talent, or other productive faculty of either spouse." *In re Marriage of Brown*, 100 Wn.2d 729, 737, 675 P.2d 1207 (1984). Each spouse has equal authority to manage community property, but neither can encumber real estate without the consent of the other, and the ability to give away property by gift or bequest is limited. RCW 26.16.030.

All property is before the court for distribution in dissolution proceedings and the trial court must characterize the property as community or separate. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999); *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). We review property characterization rulings de novo. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003).

The distribution does not have to be equal. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). After a long-term marriage (over 25 years), the court's primary goal is to establish equal financial footing for both individuals for the rest

of their lives. *In re Marriage of Doneen*, 197 Wn. App. 941, 949, 391 P.3d 594 (2017).

We review the distribution for abuse of discretion. *In re Marriage of Rockwell*, 141 Wn.

App. 235, 242-44, 170 P.3d 572 (2007). Discretion is abused when it is exercised on

untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12,

26, 482 P.2d 775 (1971). A court acts on untenable grounds when its factual findings are

not supported by the record; it acts for untenable reasons if it uses an incorrect standard

of law or the facts do not meet the requirements of the standard of law. *State v.

Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

An appellate court reviews a trial court's decision following a bench trial to

determine whether substantial evidence supports any challenged findings and whether the

findings support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318

(2009). "Substantial evidence" is sufficient evidence to persuade a fair-minded person of

the truth of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule

Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Conclusions of law are

reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We

defer to the trial court's credibility determinations, and we will not reweigh evidence

even if we would have resolved conflicting evidence differently. *Thorndike v. Hesperian

Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto

Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

*Overall Property Award.* Ms. Palomarez argues that the overall property division does not leave the parties on equal footing. *Doneen*, 197 Wn. App. at 949. She correctly points out that the $506,250 awarded to Mr. Wilcox and the $381,166 awarded to her resulted in Wilcox receiving 57 percent of the community property. Since the only significant income-producing asset was granted to the husband, the property disparity is actually greater and will grow over time.

While the trial court did the best it could by giving the wife the house, the pension, and other remaining larger assets, the resulting disparity does give us pause. Still, we need not decide the issue at this time. As a result of the rulings discussed below, the disparity will be close to 60-40 in favor of the higher earner. The trial court necessarily will have to reconsider the total property division and determine whether a transfer payment or some other arrangement is appropriate when issuing the new property award.

*Rent.* The court "awarded"[8] Ms. Palomarez $1,000 in rent for each of the 42 months she lived in the house prior to trial. She paid the remaining $35,000 on the mortgage from her separate income (primarily the support payment). Accordingly, the trial court offset the $42,000 in rent by the $35,000 benefit to the community, and offset half of the remaining $7,000 against the attorney fee award. We reverse the rent ruling and the ensuing offset awards.

---

[8] Although the trial court treated it as a property award, in practice this was an assessment of an obligation.

12

Mr. Wilcox never requested rent and Ms. Palomarez had no inkling it was a potential concern, particularly where both parties desired that she be awarded the home. In similar circumstances, Division One once wrote that, while it is common for one spouse to be temporarily awarded a house,

> [i]t is highly unusual, however, to retroactively assign a rental charge to the spouse occupying the family community property home during the pendency of the case, and then reduce that spouse's distributive share of community property accordingly. As in this case, such a determination may significantly impact the residency decisions and requests of a spouse long after the fact.

*In re Marriage of Nuss*, 65 Wn. App. 334, 338, 828 P.2d 627 (1992). The court concluded it was an abuse of discretion to charge the wife rent even though the husband made all house payments from his separate property. *Id*. at 338-39. Here, of course, the occupant spouse was the one who made the mortgage payments pending trial from her separate income. It was an even clearer case of abuse of discretion than in *Nuss*.

The decision to assess rent contrasts with the treatment of the business. In addition to his salary, Mr. Wilcox claimed the business income as his own by including it in his individual returns in 2016 and 2017, even though the separated couple had filed a joint return in 2015.[9] He treated the business as his own separate property, even while

---

[9] It would have simplified several problems if the couple had continued the joint filing of their tax return while giving each an equal share of the profits to do with as they pleased or if each had taken one-half of the annual profit and reported it on his or her respective tax return.

returning the profit to the corporation. Mr. Wilcox owed nothing to the community for his use of the business while Ms. Palomarez was charged rent to live in the community house while she was paying the housing expenses.[10] The disparate treatment constituted an abuse of discretion.

*Line of Credit.* The couple had obtained a line of credit, secured by the family home, in conjunction with the original purchase of the business. While separated, the business paid off the nearly $20,000 remaining balance on the line of credit. The trial court then awarded the debt to the husband and offset half of that amount against the wife's property. She correctly points out that this amounted to double counting because the corporation, not Mr. Wilcox, paid off the debt and that action was accounted for on the books of the business and, therefore, in its valuation.

The brief of appellant appropriately documents the business records that account for these actions. Under these facts, it amounted to double counting to treat the retired business debt as personal property of the parties. We reverse both the award of the debt to the husband and half of that debt to the wife.

*Husband's Salary.* Ms. Palomarez also argues that the court erred in valuing Mr. Wilcox's salary at $40,000 when her expert testified that it was worth $100,000 in similar business operations. This argument fails on multiple grounds.

---

[10] We imagine that she again will be credited for the mortgage payments on remand.

For purposes of spousal support, we have already explained the adjustments the court needs to make on remand. Here, Ms. Palomarez argues that the business valuation should be higher due after imputing a higher management salary to the business operator, Mr. Wilcox. This argument supported the equity interest valuation approach used by her expert that the trial judge declined to apply. One problem with this argument is that she does not assign error to the business valuation, so the topic is not before us. RAP 10.3(g).[11] A second problem is that the court did use the alternative fair market value approach suggested by her expert. Any error likely is waived.

Even if the issue were properly before us, though, we would conclude that the trial court did not abuse its discretion. It heard the competing testimony of the two witnesses and explained, thoroughly and carefully, the reasons that it rejected two of the approaches offered and, instead, accepted a third approach put forth by the wife's expert. The court had very tenable bases for acting as it did. There was no abuse of discretion.

*Down Payment*. The trial court awarded Mr. Wilcox credit for $20,000 allegedly contributed to the down payment on the community house from the sale of the home he owned before the couple married. Mr. Wilcox failed to prove this point. Substantial evidence does not support the trial court's finding.

---

[11] Mr. Wilcox assigns error to the valuation and argues that the court overvalued the business. Because he did not cross appeal, we do not consider his claim. In light of the trial court's carefully reasoned opinion, we would reject this argument if it were properly before us.

15

Mr. Wilcox did not testify concerning the source of the down payment. His attorney repeatedly asked Ms. Palomarez whether $20,000 came from the sale of Mr. Wilcox's prior house; she repeatedly answered she did not know. On appeal, Mr. Wilcox argues that because she was not credible, the evidence supported the finding.[12] This is an error of logic. One cannot draw an affirmative conclusion from a negative premise. I. COPI & C. COHEN, INTRODUCTION TO LOGIC 277-78 (10th ed. 1998); J. BRENNAN, A HANDBOOK OF LOGIC 79-81 (2d ed. 1961).

Assuming that her denial was incorrect, the only conclusion that could be drawn from the testimony is that she did know where the money came from. That is far short of establishing that the down payment actually did come from Mr. Wilcox's separate property. Substantial evidence did not support the finding that $20,000 came from Mr. Wilcox. The court erred in awarding the liability to Ms. Palomarez.

*Community Expenses Paid by Business.* Ms. Palomarez next argues that the trial court erred in treating personal and community expenses as "a wash" for valuation purposes. We disagree.

For purposes of computing income for awarding maintenance, we have already directed that the trial court consider expenses paid on Mr. Wilcox's behalf be included in

---

[12] The trial court expressly found that Mr. Wilcox generally was credible, but the court had significant doubts about Ms. Palomarez. In matters of business financing, neither was particularly sophisticated and the court discounted the testimony of both. CP at 79-80, 99.

his income. To the extent that Ms. Palomarez seeks an award of property, we conclude that this issue, too, was resolved by the valuation of the business and its assignment to Mr. Wilcox. To the extent she seeks to attribute such payments for the purpose of dividing community property, it also would amount to double counting the payments as both personal and business property.

The court did not err.

*Escrow Refund.* Lastly, Ms. Palomarez argues that the trial court erred in splitting the $986.10 escrow refund check. For two reasons, we disagree. First, she did not establish that the refund came as a result of unused escrow funded by her personal payments. While that may, in fact, be true, she did not trace back to an "empty" escrow account that she thereafter funded.

Secondly, and more fundamentally, the house was a community asset at the time it was paid off. She presumably will be credited, as she was initially, for paying off the mortgage when the court addresses the property division on remand. If so, it again would amount to double credit for her to claim the overpayment (unused escrow funds) as both her personal property and as a portion of the community debt that must be repaid to her. The trial court did not err by dividing the refund.

We reverse the property division and remand for the court to again consider the appropriate division in light of the rulings listed above. Some of the offsets to the trial court's attorney fee award also will need to be removed.

17

*Attorney Fees*

Ms. Palomarez seeks attorney fees on appeal. Both parties have filed financial affidavits addressing their current financial circumstances. We conclude that Ms. Palomarez has need and Mr. Wilcox has the ability to pay the fees. RCW 26.09.140.

Ms. Palomarez is entitled to her reasonable attorney fees on appeal upon timely request. RAP 18.1. Our commissioner will resolve any timely objection to the request.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Korsmo, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.