# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| REAL CARRIAGE DOOR COMPANY, INC., ex. rel. SCOTT T. REES, MARDIE A. R. BRODERICK and JEREMY E. BRODERICK, Shareholders Thereof; and SCOTT T. REES, MARDIE A. R. BRODERICK and JEREMY E. BRODERICK, Individually, | No. 53991-8-II |
| Appellants, | |
| v. | PART PUBLISHED OPINION |
| DON T. REES, | |
| Respondent. | |

MAXA, J. – Scott Rees, Mardie Broderick, and Jeremy Broderick (collectively, appellants) appeal the trial court's dismissal after a bench trial of their claims against Don Rees for minority shareholder oppression, breach of fiduciary duty, and fraud.

Don Rees is the president, chief executive officer (CEO), and majority shareholder of Real Carriage Door Company, Inc. (RCDC), a family business. Scott[1] and Mardie are Rees's children and Jeremy is his son-in-law. They are minority shareholders of RCDC who at one time worked for the company. When Rees filed for a divorce from his wife, the appellants sided with her and eventually terminated their employment with RCDC. Rees subsequently discontinued

---

[1] This opinion will refer to appellants by their first name when referencing them as individuals to distinguish them from family members with the same last name. No disrespect is intended.

making dividend distributions to all shareholders and, to replace the dividends he ordinarily would have received as the majority shareholder, increased his own salary by over $1 million in the first year and over $700,000 in subsequent years.

We hold that, contrary to the trial court's conclusion, under the facts of this case Rees's conduct constituted minority shareholder oppression as a matter of law and entitles the appellants to relief. In the unpublished portion of this opinion, we affirm the trial court's dismissal of the appellants' breach of fiduciary duty and fraud claims.

Accordingly, we reverse in part and affirm in part the trial court's judgment dismissing the appellants' claims, and we remand for the trial court to determine the appropriate relief for the appellants' minority shareholder oppression claim.

FACTS

*Background*

Rees was the founder, president, and CEO of RCDC. RCDC was converted to an S corporation organization, which meant that RCDC did not pay federal income tax at the corporate level. Instead, RCDC shareholders were responsible for paying taxes on their pro rata shares of RCDC's profits. At that point, Rees owned 51 percent and his wife Beth Rees owned 49 percent of the company's shares.

In 2006, Beth[2] began working for RCDC and eventually took on a human resources role. Rees later created positions in RCDC for their two adult children, Scott and Mardie, and Mardie's husband, Jeremy. Between 2010 and 2013, Rees and Beth gifted shares of RCDC stock to Scott, Mardie, and Jeremy as incentive for them to continue to work for and contribute

---

[2] This opinion will refer to Beth by her first name to distinguish her from Rees. No disrespect is intended.

to the success of RCDC.  Rees and Beth wanted the appellants to eventually take over the business.

Scott owned 6 percent of RCDC's shares.  He managed RCDC's website and computer needs.  Mardie owned 3.1 percent of RCDC's shares.  She worked in sales at RCDC, but she stopped working at RCDC in October 2009 after giving birth to her child.  Jeremy owned 2.9 percent of RCDC's shares.  Jeremy worked as a door drafter, in pricing, and in sales engineering at RCDC.

After gifting Scott, Mardie, and Jeremy their respective shares, Rees retained 51 percent and Beth retained 37 percent of RCDC's shares.

*Rees Separation and Divorce*

In March 2013, Rees and Beth separated.  The appellants blamed Rees for the couple's marital problems, and the appellants' relationships with Rees deteriorated.  Rees filed for divorce in April 2014.  The divorce was finalized in January 2015.  As part of the divorce settlement, Rees agreed to purchase Beth's ownership interest in RCDC.  After this purchase, Rees now owned 88 percent of the company's shares.

Scott terminated his employment at RCDC in December 2014.  Jeremy terminated his employment at RCDC in January 2015.  None of the appellants had any further involvement with the company after January 2015.

*Discontinuance of Dividends*

Rees's and Beth's combined annual salary in the two years before 2015 was $190,000.  They also received dividend distributions of $976,987 in 2013 and $1,116,257 in 2014.  Before 2015, all shareholders, including the appellants, received pro rata dividend distributions on a

quarterly basis. As RCDC's profits increased, the shareholders' dividend distributions increased pro rata.

In 2015, RCDC – at Rees's direction – stopped distributing dividends to shareholders and began paying Rees a dramatically increased salary instead. Rees's salary was $1,213,618 in 2015, $834,562 in 2016, $973,926 in 2017, and $954,500 in 2018. In other words, instead of distributing profits to all shareholders, RCDC essentially paid those profits to Rees in the form of a salary.

Rees explained that the reason RCDC changed its profit distribution was because the appellants no longer worked for the company:

> They had abandoned, and they had all completely left, and I was alone carrying everything; and so it didn't make sense to me to continue to pay dividends to those who were contributing nothing to the welfare and ongoing future of Real Carriage Door.

Report of Proceedings (RP) (June 19, 2019) at 52.

> It was my decision that I was alone, and the minority shareholders were no longer part of the corporation in the sense that they were no longer working and contributing and making any contribution whatsoever to the corporation; and so it came to me in my business decision to not declare any dividends from the year 2015 forward and for those reasons and those reasons alone.

RP (June 19, 2019) at 68.

*Complaint and Bench Trial*

In 2018, the appellants – individually and as shareholders of RCDC – filed a lawsuit against Rees in which they asserted claims for minority shareholder oppression, breach of fiduciary duty regarding RCDC and the shareholders, and fraud. They also sought declaratory and injunctive relief. The case proceeded to a bench trial. Scott, Mardie, and Rees all testified to the facts described above.

4

The trial court issued detailed findings of fact and conclusions of law, including the following conclusions of law (which also included some factual findings):

> 3. Defendant Rees did not breach his fiduciary duty to the corporation and the minority shareholders. The evidence showed that the corporation's practice was to distribute profits to the Plaintiffs as salary and gifts of dividends. Not distributing gifts of dividends was a reasonable and honest exercise of the directors' judgment and was not a breach of his fiduciary duty.
>
> 4. There was an implied agreement to pay the minority stockholders a salary and gifts of dividends only during the period of their employment and was terminated when they left the corporation.
> . . . .
>
> 6. Defendant Rees' decision to not distribute dividends was within the power of RCDC and his authority of management. This decision was made in good faith and was reasonable.
> . . . .
>
> 8. Defendant Rees actions were business judgments. He provided reasonable explanations for his conduct which were not oppressive. The minority shareholders failed to show oppressive conduct.
> . . . .
>
> 11. The reasonable expectations for the minority shareholders were that they would receive a salary and gift distributions of shares while employed at RCDC.

Clerk's Papers (CP) at 264-65.

The trial court also entered conclusions of law that the appellants did not prove their minority shareholder oppression, breach of fiduciary duty, and fraud claims. Therefore, the court entered a judgment that dismissed all of the appellants' claims with prejudice.

The appellants appeal the trial court's judgment.

## ANALYSIS

### A. STANDARD OF REVIEW

When reviewing a trial court's decision following a bench trial, we ask whether substantial evidence supports the trial court's findings of fact and whether those findings support

the conclusions of law. *Columbia State Bank v. Invicta Law Group PLLC*, 199 Wn. App. 306, 319, 402 P.3d 330 (2017). Evidence is substantial if it is sufficient to persuade a rational, fair-minded person that the declared premise is true. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). We view the evidence and all reasonable inferences in the light most favorable to the prevailing party. *Columbia State Bank*, 199 Wn. App. at 319. On appeal, we do not review the trial court's credibility determinations. *Id.* Unchallenged findings of fact are treated as verities on appeal. *Id.*

Here, several of the trial court's key factual findings are included in the court's conclusions of law. If findings of fact are mischaracterized as conclusions of law, we analyze them as findings of fact. *Allen v. Dan & Bill's RV Park*, 6 Wn. App. 2d 349, 365, 428 P.3d 376 (2018).

We review the trial court's application of facts to law and the court's legal conclusions de novo. *Viking Bank*, 183 Wn. App. at 712.

B.      MINORITY SHAREHOLDER OPPRESSION CLAIM

The appellants argue that Rees engaged in minority shareholder oppression by paying RCDC's profits to himself as a salary rather than making regular dividend distributions that would benefit all the shareholders. We agree.

      1.      Legal Principles

          a.      Duty to Minority Shareholders

It is a recognized principle that majority shareholders "must, at all times, exercise good faith toward the minority stockholders." *Hay v. Big Bend Land Co.*, 32 Wn.2d 887, 897, 204 P.2d 488 (1949).

The foundation of a minority shareholder oppression claim is RCW 23B.14.300(2)(b). *See Scott v. Trans-System, Inc.*, 148 Wn.2d 701, 708-09, 64 P.3d 1 (2003). Under that statute, trial courts have discretion to dissolve a corporation in a proceeding by a shareholder if there is proof that "[t]he directors or those in control of the corporation have acted . . . in a manner that is illegal, oppressive, or fraudulent." RCW 23B.14.300(2)(b). Judicial dissolution is such an extreme remedy that it should be applied with caution. *Scott*, 148 Wn.2d at 708-09. But courts also may consider alternative remedies that are less severe than dissolution, including an award of damages to minority shareholders. *Id.* at 717-18.

Courts have adopted two tests for determining oppressive conduct toward minority shareholders under RCW 23B.14.300(2)(b). *See Scott*, 148 Wn.2d at 710-11. The first test, the "reasonable expectations" test, defines oppressive conduct as an act taken by the majority in violation of the minority's reasonable expectations – " 'those spoken and unspoken understandings on which the founders of a venture rely when commencing the venture.' " *Id.* at 711 (quoting *Robblee v. Robblee*, 68 Wn. App. 69, 76, 841 P.2d 1289 (1992)). This test is most appropriate when the minority shareholder was one of the original participants in forming the corporation. *Scott*, 148 Wn.2d at 711.

The second test defines oppressive conduct as " 'burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.' " *Id.* (quoting *Gimpel v. Bolstein*, 125 Misc. 2d 45, 50-51, 477 N.Y.S.2d 1014 (Sup. Ct. 1984)). The court in *Scott* approved a statement that oppressive conduct also includes " 'the plundering of a 'close' corporation by the siphoning off of profits by excessive salaries or bonus payments and

7

the operation of the business for the sole benefit of the majority of the stockholders, to the detriment of the minority stockholders.' " *Scott*, 148 Wn.2d at 713 (quoting *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 629, 507 P.2d 387 (1973)).

The minority shareholder bears the burden to prove oppressive conduct by a preponderance of the evidence. *Scott*, 148 Wn.2d at 712. Once the minority shareholder shows oppressive conduct, "the burden shifts to the majority shareholder . . . to show there were legitimate business justifications for the conduct." *Id.* at 709. "[A]cts are not oppressive where there is a reasonable explanation for them." *McCormick v. Dunn & Black, P.S.*, 140 Wn. App. 873, 889, 167 P.3d 610 (2007).

   b. Business Judgment Rule

The business judgment rule provides immunity to corporate management for a transaction that is within the corporation's power and management's authority if "there is a reasonable basis to indicate that the transaction was made in good faith." *Scott*, 148 Wn.2d at 709; *see also* RCW 23B.08.300(4). Absent "evidence of fraud, dishonesty, or incompetence," courts generally will not interfere with the judgment of corporate management. *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269, 279, 892 P.2d 98 (1995). However, immunity does not apply when a corporate director or officer acts "in bad faith and with a corrupt motive." *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 509, 728 P.2d 597 (1986).

  2. Rees's Increased Salary in Lieu of Dividends

To prevail on their minority shareholder oppression claim, the appellants were required to prove the (1) Rees engaged in oppressive conduct, and (2) there was no legitimate business justification for the conduct. *Scott*, 148 Wn.2d at 712-13.

a.   Oppressive Conduct

The appellants had the initial burden to prove oppressive conduct by a preponderance of the evidence. *Scott*, 148 Wn.2d at 712. We hold that the trial court erred in concluding that the appellants did not satisfy this burden.

The evidence is undisputed that in 2015, RCDC at Rees's direction (1) stopped distributing dividends to shareholders, thereby depriving them of their share of company profits; and (2) converted the dividends the shareholders would have received into a dramatically increased salary for Rees. In other words, instead of distributing profits to the shareholders as RCDC historically had done, Rees paid those profits to himself.

As a matter of law, this conduct was wrongful and oppressive. The Supreme Court adopted the statement that oppressive conduct includes " 'the plundering of a 'close' corporation by the siphoning off of profits by excessive salaries or bonus payments and the operation of the business for the sole benefit of the majority of the stockholders, to the detriment of the minority stockholders.' " *Scott*, 148 Wn.2d at 713 (quoting *Baker*, 264 Or. at 629). That is exactly what happened here. Rees's decision to increase his salary in lieu of paying dividends benefitted him by preserving his pre-2015 total compensation to the detriment of the appellants, who no longer shared in company profits.

Rees argues that the trial court's findings of fact support the conclusion that paying Rees a large salary in lieu of paying dividends was justified. First, the trial court found in finding of fact 20 that RCDC took this action because Rees "now either performed or oversaw the previous duties" of the appellants after they no longer were employed at RCDC. CP at 264. Rees's additional responsibilities certainly justified *some* increase in his salary. But nothing in the record supports a finding that because the appellants no longer were working at RCDC, Rees was

9

justified in discontinuing the distribution of dividends and increasing his annual salary by $700,000 to $1 million.

Second, the trial court found in conclusion of law 3 that "[t]he evidence showed that the corporation's practice was to distribute profits to the [appellants] as salary and *gifts of dividends*." CP at 264 (emphasis added). The court found in conclusion of law 4 that "[t]here was an implied agreement to pay the minority stockholders a salary and *gifts of dividends* only during the period of their employment and was terminated when they left the corporation." CP at 264 (emphasis added). These conclusions are factual findings, which we analyze as findings of fact. *Allen*, 6 Wn. App. 2d at 365.

Based on these findings of fact, the trial court concluded that "[t]he minority shareholders failed to show oppressive conduct." CP at 265. And the court concluded that the appellants failed to prove their minority shareholder oppression claim.

Substantial evidence does not support the factual findings supporting the trial court's dismissal of the appellants' claims. Conclusions of law 3 and 4 refer to "gifts of dividends." CP at 264. Although Rees and Beth gifted stock, there was no evidence that the dividends paid were "gifts." In other words, the trial court failed to recognize the distinction between stock and dividends. The court correctly found that that the appellants' "reasonable expectations" were that they would receive "gift distributions of shares while employed at RCDC." CP at 265. But as the owners of the gifted stock, the dividends the appellants received were not "gifts"; they were the appellants' share of the company profits.

Regarding the implied agreement to pay dividends to the appellants during their period of employment that the trial court found in conclusion of law 4, Rees, Scott, and Mardie all testified that the appellants were *gifted RCDC shares* to incentivize them to continue working for RCDC.

10

But the gift of shares is a different issue than distribution of dividends. The appellants are not claiming that Rees should have continued to gift them shares after they left the company. They are claiming that they were entitled to dividends on the gifted shares that they already owned. Further, there was no evidence that supported the finding that there was an implied agreement to distribute dividends to appellants only while they were working for RCDC. Again, the appellants certainly expected that they no longer would receive gifts of stock if RCDC did not employ them. But entitlement to dividends is a different issue.

We hold that the undisputed evidence that Rees paid RCDC's profits to himself instead of paying dividends establishes that the appellants proved that Rees engaged in oppressive conduct against them as minority shareholders. Substantial evidence does not support the trial court's findings that lead the court to conclude otherwise.

> b. Reasonableness of Decision/Business Judgment

Because the appellants demonstrated oppressive conduct, the burden shifted to Rees to show "legitimate business justifications for the conduct." *Scott*, 148 Wn.2d at 709. In addition, Rees could avoid liability under the business judgment rule by showing that the dividend decision was reasonable and made in good faith. *Id.* We hold that the trial court erred in concluding that Rees established a reasonable, good faith reason for dramatically increasing his salary in lieu of payment of dividends.

The trial court concluded that Rees's decision to increase his salary in lieu of distributing dividends was reasonable and made in good faith. Specifically, the court made the following conclusions of law: (1) "[n]ot distributing gifts of dividends was a reasonable and honest exercise of the directors' judgment," CP at 264; (2) the decision not to distribute dividends "was made in good faith and was reasonable," CP at 264; and (3) "Defendant Rees' actions were

11

business judgments. He provided reasonable explanations for his conduct which were not oppressive," CP at 265.

The only findings of fact that provided support for these conclusions were the three discussed above: finding of fact 20 and the findings of fact incorporated in conclusions of law 3 and 4. The trial court concluded that Rees's decision to pay himself a dramatically increased salary in lieu of paying dividends was reasonable because he had taken on extra responsibilities and that dividends were gifts to the minority shareholders to which they were entitled only while they worked for RCDC. However, as discussed above, finding of fact 20 does not justify increasing Rees's salary by $700,000 to $1 million. The court concluded that the decision not to distribute dividends was reasonable because dividends were merely gifts that would be paid only while the appellants were working for RCDC. However, as discussed above, substantial evidence does not support the findings in conclusions of law 3 and 4.

Significantly, Rees did not explain why there was a *business* reason for not paying dividends and how his dividend decision benefitted RCDC. Instead, he admitted that the only reason he discontinued paying dividends was because the appellants no longer worked for RCDC. He was using the payment of dividends to reward the appellants while they worked for RCDC and to not reward them when they did not. But that is not a legitimate, good faith *business* reason for discontinuing the distribution of dividends while simultaneously increasing his own salary. Dividends are not "bonuses" to be distributed for good performance. They are a way that the existing shareholders share in a company's profits.

Rees also testified that "the majority shareholders of any corporation in the United States can declare dividends or not declare dividends." RP (June 19, 2019) at 67-68. Rees may be correct that no law requires a company to make dividend distributions and that whether to

12

distribute dividends generally is within a corporation's business judgment. *See* 1 F. HODGE O'NEAL & ROBERT B. THOMPSON, OPPRESSION OF MINORITY SHAREHOLDERS AND LLC MEMBERS § 3:5 (rev. 2d ed. 2011). However, there is a well-established principle that majority shareholders owe a duty of good faith to minority shareholders, *Hay*, 32 Wn.2d at 897, and Rees is incorrect that a majority shareholder simply can stop paying dividends without a valid business justification.[3]

We hold that substantial evidence does not support the trial court's findings and therefore that those findings do not support the court's conclusions that Rees's decision to discontinue the distribution of dividends was reasonable. Instead, we hold that the undisputed evidence establishes as a matter of law that Rees's justification for paying RCDC's profits to himself instead of paying dividends – because the appellants no longer worked for RCDC – was not a legitimate business reason.

c. Summary

We hold that substantial evidence does not support the trial court's findings of fact and conclusions of law regarding the appellants' minority shareholder oppression claim, and therefore that the trial court erred in dismissing that claim. We also hold as a matter of law that the appellants established their minority shareholder oppression claim.

There are a number of possible remedies for minority shareholder oppression, including the award of damages. *Scott*, 148 Wn.2d at 717-18. We remand for the trial court to determine the appropriate remedy.

---

[3] The appellants also argue that the testimony of RCDC's bookkeeper demonstrates that Rees acted in bad faith when he stopped making dividend distributions. However, Rees disputed that testimony, and the trial court's findings indicate that the court did not accept the bookkeeper's testimony on this issue.

CONCLUSION

We reverse in part and affirm in part the trial court's judgment dismissing the appellants' claims, and we remand for the trial court to determine the appropriate relief for the appellants' minority shareholder oppression claim.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished potion of this opinion, we hold that (1) Rees's salary was not excessive, and therefore Rees did not breach his fiduciary duty to RCDC; (2) the $3 million Rees received from RCDC was a loan and not a distribution of profits, and therefore Rees did not breach his fiduciary duty to RCDC's shareholders; and (3) Rees's actions did not constitute fraud.

ADDITIONAL FACTS

As part of his divorce settlement with Beth, Rees agreed to pay $3 million to purchase Beth's ownership interest in RCDC. In order to make the payment to Beth, Rees obtained approximately $3 million from RCDC, which was funded through a bank loan and existing RCDC cash reserves.

RCDC's bookkeeper, Jennifer Pomeroy, was responsible for handling RCDC's financial accounts. After the divorce settled, Rees instructed Pomeroy to record the transfer of money to Beth on RCDC's books as a note receivable from Rees. Pomeroy took notes at the meeting and recorded that she was supposed to create an amortization schedule to record interest and that the payments made to Beth should be booked as a loan to Rees. However, Pomeroy recorded the payments to Rees as "Owner Draws – Beth." Ex. 117.

In October 2016, Rees scheduled a special shareholders meeting to discuss the 2015 transfer of $3 million from RCDC to Rees. The appellants received timely notice of the special meeting and the topic of the meeting, but did not attend. At the meeting, it was agreed that the RCDC funds transferred to Rees in 2015 were supposed to have been documented as a loan. It also was agreed that the loan was to be memorialized in a promissory note payable to RCDC and executed by Rees. The promissory note was backdated to an effective date of December 31, 2015. Rees subsequently made all payments due under the loan.

Shelley Drury, a certified public accountant specializing in business valuation and forensic accounting, testified as the appellants' expert. Robert Ryan, a certified public accountant who worked with RCDC, testified as Rees's expert.

The trial court made the following conclusions of law:

5.   Defendant Rees' salary was not excessive but was reasonable and comparable to prior years when viewed as a whole given his role in RCDC and RCDC's success; his different job roles, job functions and increased work hours once the four family members left the company.
. . . .

7.   Defendant Rees is authorized to pay himself a reasonable salary and the salary payment from 2015 to the present for Defendant Rees were reasonable for a President/CEO and were not excessive.
. . . .

9.   Plaintiffs, minority shareholders failed to prove fraud by clear, cogent and convincing evidence that Defendant Rees deceived them or that he did anything that was procedurally wrong regarding the distribution of salary, the termination of distribution of dividends or the corporation loan he received and paid after his marriage was dissolved.

10.   The funds provided to Defendant Rees by RCDC used to pay his ex-wife Beth Rees was a loan secured by a promissory note. The Plaintiffs had terminated their employment with the corporation and failed to attend a special meeting after receiving timely notice. The Loan was not disguised.

CP at 264-65.

15

The court also entered conclusions of law that the appellants did not prove their breach of fiduciary duty and fraud claims. Therefore, the court entered a judgment that dismissed all the appellants' claims with prejudice.

## ANALYSIS

A.    BREACH OF FIDUCIARY DUTY CLAIM

The appellants argue that Rees breached his fiduciary duty to RCDC and to company shareholders when he (1) paid himself an excessive salary rather than making dividend distributions and (2) received a $3 million distribution from RCDC that he later characterized as a loan. They claim that Rees violated his duty to RCDC because he jeopardized the company's S corporation status, caused the company to pay extra payroll taxes, and decreased the company's value. We disagree.

1.    Legal Principles

RCW 23B.08.300(1) requires corporate directors to discharge their duties to the corporation "(a) In good faith; (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) In a manner the director reasonably believes to be in the best interests of the corporation." Similarly, corporate directors and officers owe a fiduciary duty of good faith and loyalty to their corporations. *See Interlake Porsche & Audi*, 45 Wn. App. at 508.

Shareholders also owe a fiduciary duty to the corporation and to other shareholders. *See McCormick*, 140 Wn. App. at 894-95. The scope of this fiduciary duty owed to the corporation has not been well-defined in case law "beyond the common sense prohibition against retaining personal profit owing to the corporation." *Id.* However, as noted above, it is a recognized

16

principle that majority shareholders "must, at all times, exercise good faith toward the minority stockholders." *Hay*, 32 Wn.2d at 897.

To prevail in a breach of fiduciary duty action, the plaintiff must establish that a shareholder breached his fiduciary duty and that the breach was a proximate cause of sustained losses. *McCormick*, 140 Wn. App. at 894. Whether a party has breached a fiduciary duty is a question of law. *Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 857, 292 P.3d 779 (2013).

2. Reasonableness of Rees's Post-2015 Salary

The appellants' primary argument regarding breach of fiduciary duty to RCDC is that the salaries RCDC paid to Rees were excessive, which constituted a breach of fiduciary duty because it threatened the company's S corporation status. They point out that under federal law, an S corporation can have only one class of stock, and that disguising a dividend distribution to one shareholder as salary violates this rule.

However, this argument depends on a finding that Rees's annual salaries after 2014 in fact were excessive. Therefore, the question is whether Rees's salaries were reasonable. Significantly, this is a different issue than the one addressed in the published portion of this opinion – whether recharacterizing Rees's total compensation as salary instead of dividend distributions constitutes minority shareholder oppression.

a. S Corporation Background

The appellants' breach of fiduciary duty claim relies on their allegation that Rees' decision to pay an increased salary in lieu of distributing dividends threatened RCDC's S corporation status.

An S corporation is a small domestic business corporation with less than 100 shareholders and only has one class of stock. 26 U.S.C. § 1361(a), (b)(1)(A). As a pass-through

entity, S corporations do not pay federal income taxes at the corporate level. 26 U.S.C. § 1363(a); *see also Palomarez v. Wilcox*, 15 Wn. App. 2d 187, 191, 475 P.3d 512 (2020). Instead, each shareholder reports the S corporation's taxable income or loss on their individual tax returns and pays taxes that are proportional to their individual percentage ownership interest. 26 U.S.C. § 1366(a)(1).

If an S corporation has more than one class of stock, it risks losing its status as an S corporation with the Internal Revenue Service. *See* 26 U.S.C. § 1361(b)(1)(D); 26 C.F.R. § 1.1361-1(*l*)(1). A corporation only has one class of stock when "all outstanding shares of stock of the corporation confer identical rights to distribution and liquidation proceeds." 26 C.F.R. § 1.1361-1(*l*)(1). Whether a stock confers the same rights to all shareholders depends on "the corporate charter, articles of incorporation, bylaws, applicable state law, and binding agreements relating to distribution and liquidation proceeds." 26 C.F.R. § 1.1361-1(*l*)(2)(i).

> b.  Findings of Fact

The trial court made several factual findings relevant to the reasonableness of Rees's salary after 2014. First, the court found in findings of fact 6, 7, 8, and 12 that all the appellants had stopped working at RCDC by January 2015 and that they had no further involvement with the company since then. The appellants argue that substantial evidence does not support the finding that they had no further involvement with the company.

However, the appellants do not provide any citations to the record or any substantive analysis explaining why substantial evidence does not support these findings. And in fact, Rees testified that he "was completely in charge of the company, and the entire family had abandoned the operation." RP (June 18, 2019) at 40. This statement is corroborated by testimony from Scott and Pomeroy that Scott did not perform any services for RCDC after he left the company

18

in December 2014.  Finally, there is no evidence that suggests that Mardie and Jeremy continued to provide any support after January 2015.  We conclude that substantial evidence supports findings of fact 6, 7, 8, and 12.

Second, the trial court found in finding of fact 17 that (1) total shareholder/officer compensation was $1,166,987 in 2013 and $1,306,257 in 2014, which consisted of annual salaries of $190,000 and dividend distributions; and (2) total shareholder/officer compensation in 2015 was $1,213,618, which consisted of all salary and no dividends.  The appellants do not challenge these findings, asserting only that the $190,000 was not Rees's salary alone.  Therefore, they are verities on appeal.  *Columbia State Bank*, 199 Wn. App. at 319.

Third, the trial court found in conclusion of law 5 that "Defendant Rees' salary was not excessive but was reasonable and comparable to prior years when viewed as a whole given his role in RCDC and RCDC's success; his different job roles, job functions and increased work hours once the four family members left the company."  CP at 264.  Similarly, the court found in conclusion of law 7 that "the salary payment from 2015 to the present for Defendant Rees were reasonable for a President/CEO and were not excessive."  CP at 264.  These conclusions are factual findings, which we analyze as findings of fact.  *Allen*, 6 Wn. App. 2d at 365.  The appellants also treat conclusion of law 5 as a finding of fact, arguing that substantial evidence does not support the conclusion.

The appellants rely on expert testimony from Drury to argue that Rees's salary was unreasonable.  Drury testified that a reasonable, fair market salary for Rees would be $200,000.  The appellants claim that because only Drury gave an opinion about what a reasonable salary should be and both Rees and Pomeroy testified that he changed the composition of his total

19

compensation by increasing his salary and excluding dividend distributions, substantial evidence does not support the trial court's conclusion that Rees's salary was reasonable.

However, the record shows that Ryan provided testimony that rebutted Drury's opinion. Ryan testified that Drury's fair market value replacement salary was irrelevant here because an owner's salary is "based more directly on how much value they bring to the company." RP (June 18, 2019) at 75. He also explained why Drury's methodology was flawed. We do not reweigh evidence on appeal. *Columbia State Bank*, 199 Wn. App. at 319.

Further, even Drury also admitted that "owner compensation . . . [is] very much discretionary when there is a single owner or a majority owner that has control." RP (June 17, 2019) at 112. And Drury conceded that (1) she only interviewed the appellants and possibly Pomeroy regarding Rees's duties at RCDC, (2) she did not analyze the value that Rees brought to RCDC in terms of revenue generation, and (3) she did not analyze how his efforts and services performed related to revenue.

In addition, the evidence showed that Rees's *total* compensation in 2015 and after was comparable to the total shareholder/officer compensation before 2015. Total compensation was $1,166,987 in 2013 and $1,306,257 in 2014. Rees's 2015 salary of $1,213,618 actually was lower than his total compensation in 2014, and his salary was less than $1 million in subsequent years. Only the characterization of the compensation changed from salary plus dividends to salary only. In fact, the appellants do not challenge Rees's total compensation, only the characterization.

The trial court found that "when viewed as whole" Rees's salary after 2014 was reasonable, not excessive. CP at 264. We conclude that with regard to Rees's *total compensation*, substantial evidence supports this finding.

c.    Other Arguments

In addition to their S corporation arguments, the appellants also argue that Rees's increased salary caused harm to RCDC and its shareholders based on Drury's testimony that (1) RCDC incurred greater payroll taxes and (2) the increased salary potentially diminished the value of RCDC. These arguments technically could apply even if Rees's salary was not excessive for purposes of S corporation law.

But Ryan testified that RCDC was not paying more in payroll taxes, and that Rees's increased salary did not lower RCDC's value. The trial court did not make any findings regarding the credibility of these two witnesses, but the court apparently accepted Ryan's testimony. We do not reweigh evidence on appeal. *Columbia State Bank*, 199 Wn. App. at 319.

d.    Conclusions of Law

The trial court entered a conclusion of law that "Rees did not breach his fiduciary duty to the corporation." CP at 264. The court also entered a conclusion of law that the appellants failed to prove their breach of fiduciary duty claim.

With regard to the breach of fiduciary duty, the appellants' claim depends on a finding that Rees's salaries after 2014 were excessive. As discussed above, we conclude that substantial evidence supports the trial court's findings that Rees's salaries were reasonable and not excessive. In addition, there is evidence to support the conclusion that Rees's salaries did not cause any other damage to the company. Therefore, we conclude that to the extent that the breach of fiduciary duty claim is based on the size of Rees's salary, the court's findings support the conclusion that Rees is not liable for breach of fiduciary duty to RCDC.

3. $3 Million Rees Received from RCDC

The appellants argue that Rees breached his fiduciary duty to RCDC's shareholders by receiving a $3 million distribution of profits from RCDC and then later attempting to characterize it as a loan. We disagree.

The trial court made the following findings of fact:

15. Plaintiffs received timely notice of A Special Meeting that was scheduled for October 14, 2016. Plaintiffs failed to attend the meeting.

16. On October 14, 2016 at the Special Meeting it was discussed and agreed that the RCDC funds given to Defendant Rees were supposed to have been documented as a loan to Defendant Rees. It was agreed that the loan was to be memorialized in a promissory note payable to RCDC and executed by Defendant Rees. Upon agreement, the promissory note was backdated to an effective date of December 31, 2015. Defendant Rees subsequently made all payments due under the loan.

CP at 263.

In conclusion of law 10, the trial court made a finding that "[t]he funds provided to Defendant Rees by RCDC used to pay his ex-wife Beth Rees was a loan secured by a promissory note. . . . The Loan was not disguised." CP at 265. This conclusion is a factual finding, which we analyze as a finding of fact. *Allen*, 6 Wn. App. 2d at 365.

Regarding finding of fact 15, the evidence was undisputed that the appellants received notice of the meeting and did not attend. The appellants claim that the trial court failed to acknowledge that they could not attend the meeting because of their personal work schedule and that their presence would have been futile. But the appellants do not explain why this information is relevant.

Regarding finding of fact 16 and conclusion of law 10, the appellants challenge the trial court's determination that the $3 million Rees received from RCDC was a loan, not a

distribution.[4]  They focus on the fact that the 2015 cash advances originally were classified as an owner draw in RCDC's accounting records and then reclassified as a loan at the 2016 shareholders' special meeting with a backdated promissory note.

But Pomeroy's personal notes from a meeting with Rees that occurred around the time of the divorce settlement specified that the $3 million Rees received from RCDC was to be recorded as a loan to Rees.  And Pomeroy's personal understanding was that the transaction should have been documented as a loan to Rees to be repaid by him.  Further, Rees testified about the meeting with Pomeroy and that his understanding was that the $3 million would be booked as a loan to himself.

This evidence supports a finding that the $3 million Rees received from RCDC always was intended to be a loan, and the October 2016 special meeting merely confirmed that fact and did not constitute an after the fact characterization of the transaction.  Therefore, we conclude that substantial evidence supports finding of fact 16 and conclusion of law 10.

The trial court made a conclusion of law that the appellants failed to prove their breach of fiduciary duty claim.  To the extent that this claim is based on the $3 million Rees received from RCDC, we conclude that the court's findings support this conclusion.

B.      FRAUD CLAIM

The appellants argue that Rees is liable for fraud because he paid himself an excessive salary and received an improper $3 million distribution from RCDC.  Specifically, they assert

---

[4] The appellants also argue that the trial court erred in entering finding of fact 16 because substantial evidence does not support the finding that Rees made all payments under the loan. But they do not explain why substantial evidence does not support this finding.  And Rees testified that he made all the payments due under the note.  Therefore, substantial evidence supports this specific finding.

that the trial court erred by applying the elements of common law fraud instead of the broader standard for corporate fraudulent conduct. We disagree.

As discussed above, we conclude that substantial evidence supports the trial court's findings that Rees's salary was not excessive and that Rees's $3 million distribution was properly characterized as a loan. Therefore, regardless of the standard for fraud that is applied, we conclude that these findings support the trial court's conclusions of law that the appellants failed to prove their fraud claim.

CONCLUSION

We reverse in part and affirm in part the trial court's judgment dismissing the appellants' claims, and we remand for the trial court to determine the appropriate relief for the appellants' minority shareholder oppression claim.

_____
MAXA, J.

We concur:

_____
SUTTON, J.

_____
GLASGOW, A.C.J.